[No. B058218. Second Dist., Div. Seven. July 22, 1992.]

ALEX ROBERTSON COMPANY, Plaintiff and Appellant, v.
IMPERIAL CASUALTY & INDEMNITY COMPANY, Defendant and
Respondent.

**COUNSEL**

Negele, Knopfler, Pierson & Robertson, George Knopfler and Deborah Broom Pegg for Plaintiff and Appellant.

Wild & Zaragoza, Donald R. Wild and Paul D. Fife for Defendant and Respondent.

**OPINION**

JOHNSON, J.—This is an appeal from a judgment in favor of defendant insurance company after the trial court granted its motion for summary judgment. Plaintiff's action is for breach of contract, breach of the implied covenant of good faith and fair dealing and violation of Insurance Code section 790.03 (unfair practices). The issues on appeal are whether, under a contractual liability coverage endorsement, defendant owed a duty to defend plaintiff in an action by a third party and whether defendant presently owes plaintiff a duty to indemnify it for loss under the judgment rendered in favor of the third party. The trial court concluded defendant owed neither duty to plaintiff. We affirm.

### FACTS AND PROCEEDINGS BELOW

Plaintiff, the Alex Robertson Company (Robertson), a general contractor, entered into several contracts with Melvin and Stephen Jaffee, National

Lumber & Supply, Inc., and others (collectively referred to as Jaffee) to build single-family residences and retail stores throughout Southern California. Robertson then entered into a contract with William E. Skinner & Associates (Skinner), an architectural firm, whereby Skinner agreed to provide Robertson with architectural plans and specifications for the store to be built in El Toro.[1]

At the time the architectural services agreement was executed, Skinner did not carry professional liability insurance. Robertson demanded Skinner obtain such insurance and agreed to pay the premiums. Robertson referred Skinner to Mr. Saliba, Robertson's insurance broker, who proceeded to obtain a liability policy for Skinner from Imperial Casualty & Indemnity Company (Imperial). In the course of negotiating insurance coverage for Skinner, Imperial requested a copy of the contract between Skinner and Robertson. The Skinner/Robertson contract submitted to Imperial contains an indemnity clause under which Skinner agrees to indemnify and hold harmless Robertson from liability, suits, claims, demands, judgments or penalties arising out of Skinner's negligent acts, errors or omissions.[2]

Imperial issued a professional liability policy specifically naming Skinner as the "insured" under the policy. Under the heading, "Exclusions" the policy provides coverage will not apply to claims arising out of insured's agreement to assume the liability of others unless the insured would have been liable even in the absence of such agreement. The policy also contains a "Contractual Liability Coverage Endorsement" modifying the exclusion of coverage for liability assumed by contract described above. The endorsement specifically refers to Robertson and provides the insurance afforded by the policy extends to liability which may be imposed on Robertson and which liability is assumed in writing "by the insured under the written contract described below . . . ." The contract referred to is described as "architectural services on commercial building." The endorsement also imposes certain limitations on the contractual liability covered under the policy. (This endorsement is the principal policy provision at issue and is discussed in greater detail below.)

During the time the policy was in effect, Jaffee sued Robertson for breach of contract and negligence in connection with the construction of the El Toro

---

[1]Whether Skinner contracted to provide Robertson architectural plans for other stores is not a material fact in the present litigation.

[2]Skinner disputes the validity of this alleged contract but does not dispute the fact it was submitted to Imperial as part of the insurance application process and that it is the contract referred to in the policy Imperial issued. Again, any dispute between Skinner and Robertson over the validity of this contract does not raise a material question of fact for purposes of the present case.

store, among others. (Hereafter referred to as the Jaffee litigation.) Robertson tendered defense of the claims related to the retail store to Imperial which denied the tender on the ground Robertson was not an "insured" under the policy. The Jaffee litigation proceeded to trial. The trial judge found Robertson breached its contract for the construction of the El Toro and Diamond Bar stores by "fail[ing] to provide a roof on each store that was called for in the plans and specifications." The trial judge further found, "the manner of installation was improper under the circumstances and contract . . . ." Jaffee was awarded a judgment of $955,636 on the El Toro store and $138,455 on the Diamond Bar store.

Following the judgment in the Jaffee litigation, Robertson demanded Imperial pay the portion of the judgment pertaining to the El Toro and Diamond Bar stores on behalf of its insured, Skinner. Imperial rejected Robertson's demand on the grounds Skinner denied any negligence in connection with the design of the stores; Skinner was not a party to the Jaffee litigation and therefore his liability, if any, was not determined by the judgment; and the award on its face shows the judgment was based on Robertson's breach of contract and negligence in the construction of the stores' roofs.

Thereafter, Robertson filed the present action against Imperial alleging breach of contract, breach of the covenant of good faith and fair dealing, and breach of statutory duties under the Insurance Code and requesting declaratory relief. Imperial moved for summary judgment on the grounds it had no duty to defend Robertson because Robertson was not an insured under the policy and it had no present duty to indemnify Robertson for any loss resulting from the Jaffee litigation because Skinner's liability for such loss has not yet been determined. The trial court concurred as to both grounds and granted Imperial's motion for summary judgment. A judgment was entered in favor of Imperial and Robertson filed a timely notice of appeal.

DISCUSSION

I. *Standard of Review*

The determination of Robertson's appeal requires interpretation of the insurance policy issued by Imperial. ■ We are not bound by the trial court's interpretation of the policy. Instead, we review the question of coverage independently. *(Economy Lumber Co. v. Insurance Co. of North America* (1984) 157 Cal.App.3d 641, 645 [204 Cal.Rptr. 135].) In doing so, we bear in mind two well-settled principles. ■ The duty to defend under an insurance policy is broader than the duty to indemnify. (*Gray v. Zurich*

*Insurance Co.* (1966) 65 Cal.2d 263, 275 [54 Cal.Rptr. 104, 419 P.2d 168].) Uncertainties in the terms of coverage are resolved in favor of the insured in order to protect its reasonable expectation of coverage. (*Producers Dairy Delivery Co.* v. *Sentry Ins. Co.* (1986) 41 Cal.3d 903, 912 [226 Cal.Rptr. 558, 718 P.2d 920].)

The duty to defend, however, is a contractual one. In this case the duty, under the policy, is limited to the "insured." Furthermore, expectations of coverage must be reasonable in light of the plain language of the policy. (*Farm Air Flying Service* v. *Southeastern Aviation Ins. Services, Inc.* (1988) 206 Cal.App.3d 637, 641 [254 Cal.Rptr. 1].)

II. *Imperial Did Not Owe a Duty to Defend Robertson in the Jaffee Litigation.*

The policy provides Imperial "shall defend any suit against the Insured seeking damages to which this insurance applies . . . ." It also provides, "[t]he unqualified word 'Insured' wherever used (including endorsements forming a part hereof), shall mean the Named Insured . . . ." The named insured on the policy is William E. Skinner & Associates. Thus, the policy provides in clear and unambiguous language that Imperial's duty to defend extends only to Skinner.

Nevertheless, Robertson contends it is an insured under the policy, or at least a triable question of fact exists as to that issue, by reason of the contractual liability coverage endorsement, the intent of Robertson, Skinner and Robertson's insurance agent, Saliba, that Robertson be covered, and evidence Robertson was billed for and paid the premiums on the policy. We reject this contention for the reasons discussed below.

A contractual liability coverage endorsement does not make the person an insured whose liability is assumed by the party insured under the policy. Rather, as the endorsement clearly states, it extends the insurance afforded under the policy to include coverage for liability assumed by contract by the person insured.[3] Here, the effect of the endorsement is to extend coverage,

---

[3]"CONTRACTUAL LIABILITY COVERAGE ENDORSEMENT

"The Insurance afforded by the Policy is extended to cover the liability which may be imposed by law on the person/organization designated below and which liability is assumed in writing by the Insured under the written contract described below; however, this endorse-

within the limits specified in the endorsement, to the liability assumed by Skinner in its contract with Robertson.[4]

Professional liability policies often exclude indemnification agreements with third parties because such agreements may expand the professional's liability beyond the traditional malpractice concept. (3 Stein, Construction Law (1992) §§ 13.06[4][j] & 13.17[8][c][i], pp. 13-53 & 13-152.)

Here, for example, Imperial's policy provides, "Insuring Agreements and all other provisions of this insurance shall not apply to claims or 'costs, charges and expenses' for or arising out of liability of others assumed by the Insured by agreement under any contract, whether oral or in writing, unless such liability would have attached to the Insured even in the absence of such agreement." This exclusion is modified by the contractual liability coverage endorsement set out in footnote 3, *ante*. (See *Loyola Marymount University* v. *Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 1217, 1226 [271 Cal.Rptr. 528].) As stated above, the effect of the endorsement was to provide liability coverage to *Skinner* in situations where *Skinner* had, by written contract, assumed the liability of Robertson. (Cf. *International Surplus Lines Ins. Co.* v. *Devonshire Coverage Corp.* (1979) 93 Cal.App.3d 601, 608 [155 Cal.Rptr. 870].) Robertson was a potential indemnitee of Skinner under the indemnification clause of the Skinner/Robertson contract (see fn. 4, *ante*) but Robertson was not an "insured" under the policy Imperial issued to Skinner.

Although we have found no California cases squarely on point, our conclusion as to the purpose and effect of the contractual liability coverage endorsement is supported by decisions from other jurisdictions.

*Jefferson* v. *Sinclair Refining Company* (1961) 10 N.Y.2d 422 [223 N.Y.S.2d 863, 179 N.E.2d 706] is directly on point. Sinclair and Lipsett entered into a contract under which Lipsett was to demolish certain buildings at a Sinclair oil refinery. Under the contract Lipsett agreed to indemnify

ment is limited to and affords Insurance only to the extent that such liability of the other person solely results from any negligent act, error, mistake or omission of the Insured.
"Exclusion 1 (a) of the Policy, only as modified above, does not apply to the Insurance afforded by this endorsement.

| "DESIGNATED PERSON/ORGANIZATION | DESCRIPTION OF CONTRACT |
| --- | --- |
| "The Alex Robertson Company | Architectural Services on Commercial Building" |

[4]The Skinner/Robertson contract provides in relevant part: "Architect will indemnify and hold harmless Developer from liability, suits, claims, demands, judgments or penalties which arise out of the negligent acts, errors or omissions of Architect, their employees or agents while performing Architect's Services under terms of this Agreement."

Sinclair against any liability for personal injury claims arising out of the work covered by the agreement. Subsequently, an endorsement was added to Lipsett's insurance policy with Employers Mutual Liability Insurance Company (Employers) under which Employers agreed to insure Lipsett with reference to the "Contract entered into between the named insured [Lipsett] and Sinclair Refining. . . ." Jefferson, an employee of Lipsett, was injured in an explosion while working on the Sinclair job. Jefferson sued Sinclair who, in turn, sued Employers claiming it was entitled to a defense in the Jefferson suit pursuant to the endorsement on Lipsett's insurance policy. The New York Court of Appeals rejected Sinclair's claim and affirmed the summary judgment dismissing its cause of action against Employers. The court reasoned as follows:

"True it is that Lipsett agreed to indemnify and save harmless Sinclair from personal injury claims arising out of the work involved in the contract between them, and to conduct the defense of any such suit against Sinclair. That was Lipsett's obligation. It also agreed to furnish an insurance policy by a company and in a form satisfactory to Sinclair. It did so.

"In that policy Sinclair was neither a named insured nor an additional insured. Since the endorsement on Lipsett's existing comprehensive policy under which Sinclair is claiming covers 'contractual liability,' the contract was identified in the endorsement. All [Employers] agreed to do, however, was to 'pay on behalf of the insured all sums which the insured, by reason of the liability assumed by him under [the] written contract * * * shall become legally obligated to pay.' Lipsett, the only insured, has not yet become legally obligated to pay anything; nor indeed has Sinclair. Until such event, any claim of Sinclair against Insurance Co. is premature.

"As to the 'defense' provision of the policy, [Employers] is obligated only to 'defend any suit against the insured,' namely Lipsett, and that it is now doing. If Lipsett fails in its own undertaking to defend Sinclair, the latter may well have the right to recover the reasonable counsel fees and expenses incurred in defending plaintiff's action, which is all it asks for in its third-party complaint in this action. It is not seeking specific performance of Lipsett's agreement to defend. Its claim for reimbursement of a sum not yet known nor earned is, therefore, likewise prematurely made." (*Jefferson* v. *Sinclair Refining Co., supra*, 223 N.Y.S. at pp. 865-866 [179 N.E.2d at p. 708].)

*Jefferson* recently was followed in *McKenzie* v. *New Jersey Transit Rail Operations* (S.D.N.Y. 1991) 772 F.Supp. 146, 149. (See also cases cited in

*CBF Trading Co., Inc.* v. *Hanover Ins. Co.* (S.D.N.Y. 1984) 603 F.Supp. 685, 687.)[5]

Robertson's reliance on Civil Code section 1636 is misplaced. That section states a contract must be interpreted "to give effect to the *mutual* intention of the parties." (Italics added.) Robertson submitted evidence it was the intent of Robertson and Skinner that Robertson be a named insured under the policy. Contrary to Robertson's assertion, there is no evidence in the record its agent, Mr. Saliba, understood that intent. More important, there is no evidence in the record this intent was ever communicated to Imperial. Obviously, for there to be a *mutual* intent of the parties, the intent must have been shared by Imperial. Parol evidence of the subjective, uncommunicated intent of one of the parties is not admissible to contradict the express terms of an agreement. (*Winet* v. *Price* (1992) 4 Cal.App.4th 1159, 1167 [6 Cal.Rptr.2d 554].) Thus, evidence of Skinner's subjective, uncommunicated intent that Robertson be an insured under the policy is inadmissible in construing the policy. A fortiori, the subjective uncommunicated intent of Robertson, a nonparty to the contract, that it be a party to the contract is also inadmissible.

Finally, the question who paid the premiums on the policy is irrelevant to determining who is an insured under the policy.

The trial court correctly concluded, as a matter of law, Robertson was not an insured under the Imperial policy and, therefore, not entitled to a defense by Imperial in the Jaffee litigation.

III. *Robertson's Suit Against Imperial for Indemnity Was Properly Dismissed Because Robertson Is Not an Insured Under the Policy and Skinner's Liability to Robertson Is Yet to Be Determined.*

■ Robertson alleges Imperial breached the terms of the policy and the implied covenant of good faith and fair dealing by failing to indemnify Robertson for attorney fees, costs and expenses incurred in the Jaffee litigation. This claim fails because, as we held in part I, Robertson is not an insured under the policy. Skinner is the only insured. Unless the contract of insurance provides otherwise (which is not the case here) no direct action lies against the insurer until a judgment has been obtained against the insured. (*Southern Cal. Edison Co.* v. *State Farm Mut. Auto. Ins. Co.* (1969)

---

[5]The questions whether Skinner owed a duty to defend Robertson, whether Skinner breached that duty and whether any resulting liability of Skinner's is covered by the Imperial policy are not before us at this time and we express no views thereon. (See discussion, *post*, at p. 347.)

271 Cal.App.2d 744, 748 [76 Cal.Rptr. 909]; and see Ins. Code, § 11580, subd. (b)(2).)

In essence, Robertson has sued the wrong party.[6] Its indemnity agreement is with Skinner, not with Imperial. Robertson may be able to proceed against Skinner under contractual or equitable indemnity theories. (Cf. *Hillman* v. *Leland E. Burns, Inc.* (1989) 209 Cal.App.3d 860 [257 Cal.Rptr. 535]; *Munoz* v. *Davis* (1983) 141 Cal.App.3d 420 [190 Cal.Rptr. 400].) In either case, however, it must establish liability on the part of Skinner. The Skinner/Robertson contract provides Skinner will indemnify Robertson for "liability [arising] out of the negligent acts, errors or omissions of [Skinner]." (See fn. 2, *ante*.) In the case of equitable indemnity, "one point stands clear: there can be no indemnity without liability." (*Munoz, supra*, 141 Cal.App.3d at p. 425.)

Robertson argues, however, Skinner's liability was established by the judgment in the Jaffee litigation. We find no support for this argument. Skinner was not named as a defendant in the Jaffee suit against Robertson and took no part in the trial of that action. Skinner is not mentioned in the trial court's statement of decision or judgment. The statement of decision suggests, if anything, Robertson was solely responsible for the damage to Jaffee. (However, we do not decide this question here.)

Under the policy, Imperial agreed to pay "on behalf of [Skinner] all sums which [Skinner] shall become legally obligated to pay . . . by reason of liability arising out of any negligent act . . . in rendering or failing to render professional services . . . ." Skinner has not yet become legally obligated to pay anything. Until such event, any claim by Robertson against Imperial under the policy is premature.

Robertson's failure to obtain a prior final judicial determination of Skinner's liability is also fatal to Robertson's unfair practices cause of action. True, its action is not barred by *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] because it was filed before that decision became final (*id.* at p. 305). Nonetheless, for surviving *Royal Globe* actions a final judicial determination of the insured's liability is a condition precedent to suit against the insurer. (*Id.* at p. 313.) Because no such determination was made in this case, the statutory claim was properly dismissed.

---

[6]It appears from oral argument on the motion for summary judgment Robertson filed a cross-complaint against Skinner in the Jaffee litigation but the cross-complaint was severed for purposes of trial on Jaffee's claims against Robertson. So far as we can determine from the record, no judgment had been entered in Robertson's suit against Skinner as of the granting of the summary judgment in the present case.

## DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Woods (Fred), J., concurred.

Appellant's petition for review by the Supreme Court was denied October 16, 1992.