8 F.3d 28
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LEXINGTON INSURANCE COMPANY, Plaintiff-Appellee,
v.
HARTFORD FIRE INSURANCE COMPANY, Defendant-Appellant,
 No. 92-55275.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 10, 1993.
Decided Oct. 5, 1993.
 
 Before: FLETCHER, POOLE and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In this declaratory judgment action, Hartford Fire Insurance Company ("Hartford") appeals the district court's grant of summary judgment in favor of Lexington Insurance Company ("Lexington"). We affirm in part, reverse in part, and remand for further proceedings.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 This coverage dispute arises out of injuries sustained by James Randall when a truck in which he was a passenger struck a steam riser on the premises of Shell Western Exploration & Production, Inc. ("Shell"), causing the release of superheated steam. Randall and the driver were employees of Coastal Engineering Co. ("Coastal") and were on Shell's property to service Shell equipment pursuant to a contract between Shell and Coastal (the "Shell/Coastal contract"). The truck was owned by Coastal.
 
 
 4
 James Randall and Dawnett Randall filed a personal injury action in California state court, naming Shell, but not Coastal, as a defendant (the "Randall action" or "Randall complaint"). The Randall complaint alleged that Shell had
 
 
 5
 carelessly and negligently failed and/or refused to mark or identify the specific location of the steam line valves, carelessly and negligently failed and/or refused to erect, construct and maintain protective barriers around the steam valves and carelessly and negligently failed and/or refused to maintain the steam valves clear of weeds, tumbleweeds, and other debris which would obscure and conceal the valves from persons working on Shell's premises including, but not limited [to Randall].
 
 
 6
 (Certified Record 15 ex. A at 5.) It further alleged that Shell had "failed to maintain, protect[ ] or failed to protect in a safe way, the steam valve on the premises" and "carelessly and negligently warned or failed to warn about the hidden danger that existed on the premises by reason of the unmarked and unprotected steam valve concealed by tumbleweeds." (Id. at 8.)
 
 
 7
 Under the Shell/Coastal contract, Coastal was obligated to maintain liability insurance and indemnify Shell for certain occurrences. The indemnification clause provided in pertinent part that Coastal
 
 
 8
 shall defend, indemnify and hold harmless [Shell] ... against any loss, damage, claim, suit, liability, judgment and expense (including attorneys' fees and other costs of litigation) ... arising out of injury, disease or death of persons or damage to or loss of any property ... resulting from or in connection with performance or nonperformance of work ... by [Coastal], its agents or subcontractors, even though caused by the concurrent and/or contributory negligence ... or fault of a party indemnified, subject to the next succeeding sentence herein. Without regard to the extent of negligence, if any, of an indemnified party, [Coastal], at its expense, shall defend any such claim or suit against an indemnified party and shall pay any judgment resulting therefrom....
 
 
 9
 (C.R. 15 ex. B at 7.)
 
 
 10
 At the time of the accident, Coastal had two insurance policies in effect, a comprehensive general liability policy issued by Lexington Insurance Company (the "Lexington policy"), and a business automobile liability policy with Hartford Accident & Indemnity Company (incorrectly identified as Hartford Fire in the complaint) (the "Hartford policy"). Both policies carried liability limits of $1,000,000. In keeping with Coastal's contractual obligations to Shell, the Lexington policy extended coverage to Shell as an additional insured. Shell therefore tendered its defense in the Randall action to Lexington, which proceeded to defend Shell. Hartford refused to defend the action.[1] Lexington ultimately settled the matter for $425,000.
 
 
 11
 Lexington subsequently filed this declaratory relief action to recover the settlement amount and attorney's fees from Hartford. The district court granted summary judgment to Lexington, ruling that the "insured contract" provision of Hartford's policy applied such that Hartford had been obligated to defend and indemnify Shell. The court further held that, even though coverage existed under Lexington's policy, pursuant to California Insurance Code § 11580.9(d), Hartford's was the primary policy in effect. Accordingly, the court awarded full reimbursement to Lexington in the amount of $478,840.43, representing the $425,000 settlement plus $53,840.43 incurred by Lexington in attorney's fees and costs.
 
 
 12
 Hartford has timely appealed the grant of summary judgment.
 
 STANDARD OF REVIEW AND APPLICABLE LAW
 
 13
 We review de novo the district court's grant of summary judgment. Saul v. United States, 928 F.2d 829, 832 (9th Cir.1991). We must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court correctly applied the relevant substantive law. MAI Systems Corp. v. Peak Computer, Inc., 991 F.2d 511, 516 (9th Cir.1993). The parties agree that California law is the substantive law to be applied to this dispute.
 
 DISCUSSION
 A. The Hartford Policy
 
 14
 The insuring language in the Hartford policy issued to Coastal provides that Hartford
 
 
 15
 will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto." We have the right and duty to defend any "suit" asking for these damages. However, we have no duty to defend "suits" for "bodily injury" or "property damage" not covered by this Coverage Form. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.
 
 
 16
 (Excerpts of Record ("E.R.") ex. 9 at 10.) "Auto" is defined to include a truck. (Id. at 16.) "Suit" is explained to be "a civil proceeding in which damages because of 'bodily injury' or 'property damages' to which this insurance applies are alleged." (Id. at 17.) The policy further provides as follows:
 
 B. EXCLUSIONS
 
 17
 This insurance does not apply to any of the following:
 
 
 18
 ....
 
 2. CONTRACTUAL
 
 19
 Liability assumed under any contract or agreement.
 
 
 20
 But this exclusion does not apply to liability for damages:
 
 
 21
 a. Assumed in a contract or agreement that is an "insured contract;" or
 
 
 22
 b. That the "insured" would have in the absence of the contract or agreement.
 
 
 23
 (Id. at 11.) An "insured contract," in turn, is defined to include
 
 
 24
 [t]hat part of any ... contract or agreement pertaining to your business under which you assume the tort liability of another to pay damages because of "bodily injury" or "property damage" to a third person or organization, if the contract or agreement is made prior to the "bodily injury" or "property damage."
 
 
 25
 (Id. at 16.)
 
 
 26
 On its face, the Hartford policy provided coverage. Coastal was contractually obligated to indemnify Shell for Shell's tort liability to Randall. Hartford insured this liability by virtue of the "insured contract" exception to the contractual liability exclusion in the policy it issued to Coastal.
 
 
 27
 Hartford contends that this reading of the "insured contract" exception is insupportable because it effectively extends coverage beyond the limits contemplated by the "basic" policy provisions. This argument is unavailing. The basic grant of insurance in the policy does not exclude coverage in cases in which the insured is subjected to liability as a result of its contractual obligation to a third party. Rather, under the insuring language quoted above, Hartford has a duty to defend any suit seeking damages for bodily injury or property damage that the insured has (or will have) a legal obligation to pay. "Suit" is not limited to a suit against the insured; rather, it is defined broadly (and somewhat circularly) to include any suit alleging damages to which the Hartford insurance applies. The "insured contract" exception therefore does not fall outside the scope of the basic policy.
 
 
 28
 Hartford also attempts to rely upon Alex Robertson Co. v. Imperial Casualty & Indem. Co., 10 Cal.Rptr.2d 165 (Ct.App.1992), review denied, to support its argument that the "insured contract" provision does not bestow coverage. In Alex Robertson, a general contractor entered into contracts with a lumber and supply company and an architect, Skinner, in connection with various construction projects. Id. at 166. In his contract, Skinner agreed to indemnify the general contractor for liability arising out of Skinner's own " 'negligent acts, errors, or omissions.' " Id. at 170. The lumber and supply company later sued the general contractor, which in turn tried to collect from Skinner's insurer, even though Skinner had not been a party to the litigation and denied any negligence. Id. at 167. The court of appeal held that Skinner's insurer had no obligation to defend in the underlying action between the lumber and supply company and the general contractor because Skinner's policy provided in unambiguous terms that the insurer was only obligated to " 'defend any suit against the Insured.' " Id. at 168 (quoting policy) (emphasis added). Alex Robertson, therefore, is distinguishable from the case here, for two reasons. First, the language of the Hartford policy does not limit the duty to defend to suits against the insured. Second, no liability had been established against the insured in Alex Robertson, as it has been here via the operation of the Shell/Coastal indemnity agreement.
 
 
 29
 Hartford also seeks to invoke St. Paul Fire and Marine Ins. Co. v. Coss, 145 Cal.Rptr. 836 (Ct.App.1978), to defeat coverage. In Coss, the issue was whether Coss' insurer had a duty to defend Coss, a general contractor, in an action alleging Coss' defective workmanship in building a home. An exclusion in the policy at issue provided that the insurance did not extend to contractual liabilities, " 'but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner.' " Id. at 840. The court held that the exception to the exclusion did not create coverage, however, because other exclusions in the policy clearly eliminated coverage for damage arising out of defective workmanship. "[T]he exclusion cannot act as an additional grant or extension of coverage.... The exception remains subject to and limited by all other related exclusions contained in the policy." Id. at 841. The policy at issue in Coss therefore differs in a material respect from the one here in that the one here does not contain other exclusions that would serve to limit coverage for Coastal's liability under the indemnification agreement.
 
 
 30
 Furthermore, we note that in other cases, California courts have recognized that an exception to an exclusion can preserve coverage where the exclusion would otherwise have the effect of eliminating it:
 
 
 31
 [I]f exceptions to exclusions are subject to and limited by all other related exclusions, a fortiori the same rule should apply to exclusions themselves. This is because exceptions to exclusions are somewhat analogous to coverage provisions and we construe coverage provisions broadly in favor of the insured; exclusions, by contrast, are construed strictly against the insurer.
 
 
 32
 National Union Fire Ins. Co. v. Lynette C., 279 Cal.Rptr. 394, 399 (Ct.App.1991) (emphasis omitted) (distinguishing Coss), review denied. In particular, California courts have recognized, under exceptions to general exclusions of coverage for contractual liabilities, coverage for tort liabilities of third parties that the insured assumes by contract. Loyola Marymount Univ. v. Hartford Accident and Indem. Co., 271 Cal.Rptr. 528, 531 (Ct.App.1990) ("The effect of the exclusion and corresponding 'contractual liability' endorsement was first to exclude from coverage tort liabilities which the insured assumed by contract, and thereafter to reinstate such coverage as to the contracts designated.") (emphasis omitted)); International Surplus Lines Ins. Co. v. Devonshire Coverage Corp., 155 Cal.Rptr. 870, 873 (Ct.App.1979) (effect of special endorsement to exclusion for contractual liability was "to provide liability for coverage to [the insured] in situations where [the insured] had by written contract assumed the liability of a third party").
 
 
 33
 In sum, there is no principle of California law that overrides the "insured contract" provision in Hartford's policy. The district court did not err in ruling that the policy provided coverage for Coastal's liability to Shell arising out of the Randall action.[2]
 
 B. California Insurance Code § 11580.9
 
 34
 The district court held that Hartford must be treated as the primary insurer as a matter of California law and was therefore responsible for Shell's entire liability arising out of the Randall action. We conclude that the court erred in this determination by misinterpreting the provision upon which it relied.
 
 
 35
 California has, in California Insurance Code § 11580.9, enacted a number of conclusive presumptions in the automobile liability context so as to reduce coverage disputes in situations in which more than one policy potentially applies. Transport Indem. Co. v. Royal Ins. Co., 234 Cal.Rptr. 516, 517 (Ct.App.1987). An insurer may only override the statutory presumptions "by written agreement signed by all insurers who have issued a policy or policies applicable to a loss" described in section 11580.9. Cal.Ins.Code 11580.9((f); Transport Indem., 234 Cal.Rptr. at 517.
 
 
 36
 Subdivision d of section 11580.9 provides that
 
 
 37
 where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess.
 
 
 38
 Cal.Ins.Code § 11580.9(d).
 
 
 39
 The Hartford policy is an automobile liability policy. The Lexington policy is a comprehensive general liability policy which expressly excludes from coverage bodily injury and property damage "arising out of the ownership, maintenance, operation, use, loading or unloading of" any automobile owned by the insured.[3] (E.R. ex. 10 at 4.) The district court, citing National American Insurance Co. v. Insurance Co. of North America, 140 Cal.Rptr. 828 (Ct.App.1977), concluded that subdivision d resolved in Lexington's favor the question of which insurance applied because "the vehicle involved in the accident was a 'covered automobile' under Hartford's policy." (E.R. ex. 5 at 2.)
 
 
 40
 By its terms, subdivision d only comes into play in situations in which two policies both "apply" to a motor vehicle involved in an accident. The California courts have construed this language to mean that there must be two automobile policies, or at least two policies providing automobile coverage. One court has characterized the existence of such dual coverage as a statutory "element" which must be met before subdivision d is to be invoked. Transport Indem., 234 Cal.Rptr. at 517; see also, Hertz Corp. v. Home Ins. Co., 18 Cal.Rptr.2d 267, 273 n. 9 (Ct.App.1993) ("When two automobile liability policies are applicable, the terms of section[ ] ... 11580.9 determine which is primary and which is excess."), petition for review ordered withdrawn, No. S032756, 1993 Cal. LEXIS 3083 (June 7, 1993); cf. Younker v. County of San Diego, 285 Cal.Rptr. 319, 323 n. 8 (Ct.App.1991) (even if County's self-insurance constituted an automobile liability insurance policy for purposes of section 11580.9, the other automobile liability policy was primary because it described the vehicle in question).
 
 
 41
 In National American, the case cited by the district court to support its ruling that Hartford was the primary insurer, the California court "observe[d]," without much discussion, the "applicability" of section 11580.9. 140 Cal.Rptr. at 833. In that case, a homeowners as well as an automobile policy potentially offered coverage with respect to when section 11580.9 is relevant. Id. at 832-33. National American is thus in harmony with the other California cases with respect to when section 11580.9 comes into play. It is, however, distinguishable from the case at hand. Here, the Lexington policy expressly excluded coverage for liability arising out of the use of an automobile. Because the Lexington policy did not "apply" to the vehicle involved in the accident, the district court erred in looking to section 11580.9 to resolve the coverage dispute.
 
 C. The "Other Insurance" Provisions
 
 42
 Since subdivision d of section 11580.9 is not controlling and both Hartford's and Lexington's policies potentially provided coverage, we must turn to the relevant policy provisions in order to decide which insurer must pay. Each policy contains an "other insurance" clause setting forth policy limitations in the event that other insurance is available with respect to the same occurrence. Hartford's "other insurance" provision provides in relevant part as follows:
 
 5. OTHER INSURANCE
 
 43
 a. For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance....
 
 
 44
 ....
 
 
 45
 c. When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.
 
 
 46
 (E.R. ex. 9 at 15.) And, in an exclusion to the Hartford policy:
 
 
 47
 The Liability Coverage for liability assumed under an 'insured contract' does not apply if there is any other insurance available whether primary, excess or contingent. This exclusion does not apply if such other insurance is specifically written to apply in excess of this Coverage Form.
 
 
 48
 (Id. ex. 9 at 20.) The Hartford exclusion is known in industry parlance as an "escape clause." Chamberlin v. Smith, 140 Cal.Rptr. 493, 500 (Ct.App.1977).
 
 
 49
 Lexington's "other insurance" clause provides:
 
 
 50
 6. Other insurance: The insurance afforded by this policy is primary insurance except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the company's liability under this policy shall not be reduced by the existence of such other insurance.
 
 
 51
 When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
 
 
 52
 (a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than would be payable if each insured contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.
 
 
 53
 (b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid or collectible insurance against such loss.
 
 
 54
 (Id. ex. 10 at 2.)
 
 
 55
 Since Coastal owned the truck involved in the accident, but for its escape clause, Hartford's policy would apply on a primary basis. The Lexington insurance, which afforded coverage for the premises liability, can also be characterized as primary insurance. That being said, however, the two policies' "other insurance" clauses give rise to a dilemma: Under Hartford's escape clause, Hartford's policy does not apply because there is coverage under the Lexington policy. But Lexington's policy indicates that because Hartford's policy "does not provide for contribution by equal shares," Lexington will only contribute on a pro rata basis. Under either scenario, Coastal is left without full coverage.
 
 
 56
 Fortunately, California courts have provided a way out of this logical circle:
 
 
 57
 The applicable principle appears to be that "escape" clauses are not favored in the law and that, where they are in conflict with the "other insurance" clause in another policy covering the same risk, with the result that if both clauses are given validity the insured is left unprotected,--the "escape" clause will be disregarded and the "other insurance" clauses in both policies will be given effect on the basis of applicable proration.
 
 
 58
 Continental Casualty Co. v. Pacific Indem. Co., 184 Cal.Rptr. 583, 586 (Ct.App.1982); see also Employers Reinsurance v. Mission Equities Corp., 141 Cal.Rptr. 727, 731 (Ct.App.1977) ("[I]t is well established that an escape clause is less favored under the law than a pro rata or excess clause.")
 
 
 59
 Hartford attempts to invoke Underground Constr. Co., Inc. v. Pacific Indem. Co., 122 Cal.Rptr. 330 (Ct.App.1975), in support of its contention that its escape clause is supreme. Underground is distinguishable, however, in that the court there determined that the clauses at issue--which, unlike those here, contained "excess" provisions--could be reconciled. Id. at 335-36. Notably, the court emphasized that it was not faced with the situation where the clauses were "mutually repugnant," and that in such a case, the escape clause could not be given effect. Id.
 
 
 60
 Under the law of California, Hartford's escape clause must be invalidated and Lexington's "Contribution by Limits" provision controls. The pro rata clause requires each insurer to pay the same proportion of the loss that its liability limit bears to the entire amount of available insurance. Both the Hartford and Lexington policies had liability limits of $1 million. Therefore, Hartford should reimburse Lexington one-half of the settlement amount and attorney's fees.
 
 D. Attorney's Fees
 
 61
 In granting summary judgment to Lexington, the district court adopted without comment Lexington's "uncontroverted fact" that it had incurred $53,840.43 in attorney's fees and costs in connection with the Randall action. This amount, however, was disputed by Hartford in its summary judgment papers, which noted a discrepancy between the figure supplied in a declaration submitted by Lexington and that provided in Lexington's interrogatory responses. Summary judgment on this issue was therefore improper. Accordingly, we remand to the district court for further proceedings to determine the amount of fees and costs incurred by Lexington in defending the underlying lawsuit.
 
 
 62
 AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Although counsel for Hartford stated at oral argument that there was "no evidence" in the record that the defense was ever tendered to Hartford by Coastal, in its Statement of Genuine Issues in Opposition to Lexington's Motion for Summary Judgment, Hartford conceded that it was undisputed that it had "refused to defend and indemnify [Shell]" in the lawsuit. (C.R. 19 at 14.)
 
 
 [2]
 In light of our conclusion that the Hartford policy afforded coverage under the "insured contract" clause, we do not address Lexington's additional contention that Hartford is liable because Shell was "using" Coastal's truck at the time of the accident
 
 
 [3]
 Presumably, the coverage Lexington admits is for the liability arising out of Shell's allegedly negligent maintenance of its premises