[No. G036312. Fourth Dist., Div. Three. Apr. 6, 2007.]

INFINET MARKETING SERVICES, INC., Cross-complainant and Appellant, v.
AMERICAN MOTORIST INSURANCE COMPANY, Cross-defendant and Respondent.

[No. G036248. Fourth Dist., Div. Three. Apr. 6, 2007.]

AMERICAN MOTORISTS INSURANCE COMPANY, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
INFINET MARKETING SERVICES, INC., Real Party in Interest.

**COUNSEL**

Steven W. Murray; Cates Peterson and Mark D. Peterson for Cross-complainant and Appellant and for Real Party in Interest.

No appearance for Respondent.

Sedgwick, Detert, Moran & Arnold, Frederick Douglas Baker, Brian D. Harrison and Vanessa L. O'Brien for Cross-defendant and Respondent and for Petitioner.

OPINION

O'LEARY, J.—Labor Code section 3602, subdivision (d),[1] allows an employer that leases or borrows an employee from another employer to fulfill its statutory obligations to obtain workers' compensation insurance by contracting with the other employer for the other employer to obtain such coverage. In this case, three client companies allegedly leased workers from an employee leasing company pursuant to an agreement by which the employee leasing company was to obtain workers' compensation insurance covering the leased workers. The client companies' injured workers were later denied workers' compensation coverage under the workers' compensation policy allegedly obtained by the employee leasing company. The client companies sued the marketing company that introduced the client companies to the employee leasing company. The marketing company tendered its own defense to the employee leasing company's carrier contending it was a third party beneficiary of the workers' compensation policy. When a defense was refused, the marketing company cross-complained against the insurance company claiming insurance bad faith. In these consolidated actions we agree with the insurer that the marketing company is not a third party beneficiary of the insurance contract.

## FACTS AND PROCEDURE

These consolidated cases involve employee leasing services provided by either Omne Staffing Services, Inc. (Omne Staffing), or Omne Staff Leasing Services, Inc. (Omne Leasing), to three client companies.[2] Omne Staffing is a Delaware corporation. Omne Leasing is a Florida corporation. InfiNet

---

[1] All further statutory references are to the Labor Code, unless otherwise indicated.

[2] Employee leasing companies (also sometimes called professional employer services) typically "contract[] with client companies to provide leased labor and labor-related services, i.e., payroll, safety and tax services and employment benefits, including workers' compensation insurance[]" for employees the client company already has. (*Diamond Woodworks, Inc. v. Argonaut Ins. Co.* (2003) 109 Cal.App.4th 1020, 1030–1031 [135 Cal.Rptr.2d 736] (*Diamond Woodworks*), disapproved on other grounds in *Simon v. San Paolo U.S. Holding Co., Inc.* (2005) 35 Cal.4th 1159, 1182–1183 [29 Cal.Rptr.3d 379, 113 P.3d 63].) The fees the client company pays the employee leasing company cover the costs of premiums, and the arrangement brings down the effective cost of workers' compensation insurance to the client companies because the employee leasing company can usually purchase workers' compensation insurance at a better rate. "As long as the employee leasing company obtains such coverage for the leased workers, the client company has also 'secured the payment of compensation' and cannot be sued for tort damages by a leased worker who is injured while working for the client company. (. . . § 3602, subd. (d) . . . .)" (*Diamond Woodworks, supra,* 109 Cal.App.4th at pp. 1030–1031.)

Marketing Services, Inc., doing business as InfiNet Insurance and Financial Network (InfiNet), is a Texas corporation in the business of providing marketing services to employee leasing companies.

In 2002, the predecessor of American Motorist Insurance Company (AMICO) issued workers' compensation and employer's liability policy No. 5BR08510700 (hereafter, the policy) to Omne Staffing. The policy requires AMICO to pay all workers' compensation benefits required by law to be paid by the named insured, and to defend the named insured in any proceeding against it for those benefits. Omne Staffing is the only named insured on the policy, and the policy contains no provision or endorsement for coverage of alternate or additional employers.

The client companies involved here include Suburban Plastering, Inc., doing business as Proline Plastering and Martin Bros./Marcowall (sometimes collectively referred to as Suburban), which are the plaintiffs in *Suburban Plastering v. InfiNet Insurance and Financial Network* (Super. Ct. Orange County, No. 04CC07426) (hereafter, the Suburban action). The other client company is R.C. Wendt Painting, Inc., which is the plaintiff in *R.C. Wendt Painting, Inc. v. InfiNet Insurance and Financial Network* (Super. Ct. Orange County, No. 04CC09215) (hereafter, the Wendt action). At the heart of both actions are the client companies' claims that promised workers' compensation insurance was not obtained, exposing them to civil liability when workers were injured.

*The Suburban Complaint*

In July 2004, Suburban filed its complaint against InfiNet (and other defendants) alleging various tort and statutory causes of action arising out of its relationship with Omne Staffing and InfiNet. The Suburban complaint alleged that in January 2003, the two client companies (i.e., Suburban and Martin Bros.) had negotiated with Omne Staffing and InfiNet for Omne Staffing *and* InfiNet to act as coemployers of the client companies' employees and, among other things, procure workers' compensation insurance, process payroll, and submit payroll tax payments to federal and state authorities covering those employees. Although no written contract was fully executed, throughout 2003, the client companies paid Omne Staffing large sums of money (in the range of $10 million combined), which fees included the client companies' workers' compensation insurance premiums. By early 2004, the

client companies learned Omne Staffing had not procured workers' compensation insurance covering their leased employees. Omne Staffing's assets had been seized by the federal government and criminal proceedings commenced against it. Apparently, by the time this action was commenced Omne Staffing and Omne Leasing were in bankruptcy, and they were not named as defendants.

InfiNet's answer to the Suburban complaint included a general denial of all allegations of the complaint. InfiNet also raised numerous affirmative defenses, including that the client companies had failed to mitigate their damages by "adequately [pursuing] worker's compensation insurance coverage which, on information and belief, was purchased for the benefit of [the client companies'] workers . . . ."

*The Wendt Complaint*

Wendt also filed an action for misrepresentation, conversion, and breach of contract against InfiNet (and other defendants). The second amended complaint contained similar allegations to those in the Suburban complaint. Wendt alleged there was a business relationship between InfiNet and Omne Staffing regarding obtaining workers' compensation insurance for "workers assigned to [Wendt] by [Omne Staffing]." InfiNet represented to Wendt workers' compensation insurance for its leased workers "would be obtained by and through [its] business relationship with [Omne Staffing] . . . ." Wendt and InfiNet entered into a contract concerning Omne Staffing's provision of leased workers to Wendt, and InfiNet had breached the agreement by failing to procure workers' compensation insurance. An insurance producer, First Union, issued certificates of insurance to Wendt indicating there was coverage for its leased workers, and Wendt paid premiums to Omne Staffing. But the policy that had been obtained did not cover Wendt's leased workers.

*InfiNet's Cross-complaints in the Suburban and the Wendt Actions*

In both the Suburban action and the Wendt action, InfiNet filed virtually identical cross-complaints against the client companies and AMICO, for declaratory relief and, as to AMICO, for breach of duty to defend and breach of the covenant of good faith and fair dealing. InfiNet alleged the workers' compensation policy issued by AMICO to Omne Staffing covered the employees leased to the client companies and the client companies had failed to compel AMICO to honor its obligations under the policy.[3]

---

[3] Although both complaints allege the client companies' employee leasing agreements were with Omne Staffing, AMICO disputes this and suggests Omne Leasing, a separate legal entity, which is not a named insured, was the entity with which the client companies had contracted for employee leasing services. That dispute cannot be resolved on the record before us.

In both cross-complaints, InfiNet specifically described itself as an independent provider of marketing services for professional employer organizations, putting small to midsize companies together with companies like Omne Staffing. Omne Staffing would then act as the general employer for the client companies' workers, providing necessary administrative services and obtaining workers' compensation insurance. InfiNet alleged it "was only the 'matchmaker' between [Omne Staffing], as general employer, and [the client companies], which became special employers." InfiNet alleged the AMICO policy covered all persons who worked for Omne Staffing, and by law it covered the client companies' leased workers. InfiNet "denied that it is a general employer of any kind . . . ."

InfiNet alleged the client companies' injured workers filed workers' compensation claims, which the client companies tendered to AMICO. But AMICO denied defense or indemnity coverage to the client companies. When the client companies then filed this action against InfiNet, InfiNet tendered its own defense to AMICO under the policy. AMICO denied InfiNet a defense or indemnity because InfiNet was not an insured under the policy.

InfiNet's cross-complaint sought a declaration as to the client companies' and its own rights under the AMICO policy. It also alleged causes of action against AMICO for breach of the insurance contract (i.e., breach of the duty to defend), and breach of the implied covenant of good faith and fair dealing contained in the insurance policy.

*AMICO's Motions for Summary Judgment*

AMICO filed virtually identical motions for summary judgment in both cases arguing there was no triable issue of fact as to whether InfiNet was an insured under the policy. The face of the policy was unambiguous; the only named insured was Omne Staffing, and there was nothing on the face of the policy, or any other evidence, that InfiNet was an express or intended beneficiary of the policy. AMICO's undisputed facts included that AMICO issued the policy to Omne Staffing, and listed only Omne Staffing as a named insured. Omne Staffing and Omne Leasing were separate corporations, and AMICO denied coverage to InfiNet because it was not an insured under the policy.

In its opposition, InfiNet did not dispute the contents of the policy, or that Omne Staffing was the only named insured on the policy. InfiNet contended section 3602, subdivision (d), as a matter of law, made it a third party beneficiary of the AMICO policy because it was alleged to be a co-general

employer of Omne Staffing's leased employees. In its separate statement, InfiNet presented petitions filed by AMICO in three unrelated workers' compensation proceedings (i.e., not involving workers of Suburban, Martin, or Wendt), to join InfiNet as a party defendant because InfiNet was possibly also an employer of the injured workers involved in those proceedings.

*Ruling in the Suburban Action*

The trial court granted the motion for summary judgment in the Suburban action. It found AMICO had demonstrated InfiNet was not a named insured on the policy. Furthermore, InfiNet did not demonstrate it was an employer within the meaning of section 3602, subdivision (d), and the petitions filed by AMICO in the three workers' compensation proceedings did not constitute evidence InfiNet was such an employer. The court noted InfiNet "does not argue that it is actually a co-employer," and to the contrary, had specifically alleged in its cross-complaint Omne Staffing was the general employer and it had merely acted as the "matchmaker between [Omne Staffing] and [the client company] leasing employees from [Omne Staffing]."

*Ruling in the Wendt Action*

A different trial court denied AMICO's motion for summary judgment in the Wendt action. As in the Suburban action, the trial court found AMICO had met its initial burden to show InfiNet was not entitled to coverage under its policy by showing InfiNet was not a named insured, shifting the burden to InfiNet to demonstrate coverage. But, the court agreed that under section 3602, subdivision (d), *all* coemployers of Omne Staffing's leased employees were third party beneficiaries of the AMICO policy. The court concluded that although "InfiNet denie[d] it is an employer," the fact that AMICO "filed a Petition in the Workers Compensation case seeking a finding that InfiNet is an employer," created a triable issue of fact as to whether InfiNet in fact was a coemployer.[4]

*The Appeal and the Writ*

InfiNet appealed from the judgment in the Suburban case. AMICO filed a petition for writ of mandate in the Wendt case. In the writ proceeding, we

---

[4] On October 16, 2006, InfiNet filed a request for judicial notice of two rulings from the San Diego Superior Court in other actions involving AMICO, InfiNet, and different client companies than those involved in these consolidated cases. The request for judicial notice is denied.

On March 29, 2007, after this case was taken under submission, AMICO filed a request for judicial notice of an unpublished appellate court opinion concerning a Santa Barbara County Superior Court action involving AMICO, InfiNet, and a different client company than those involved in these consolidated cases. (*InfiNet Marketing Services v. American Motorist Ins. Co.* (Mar. 26, 2007, B187714).) The request for judicial notice is denied.

issued an order to show cause and stayed the trial court proceedings on InfiNet's cross-complaint in the Wendt case, but left the trial court with discretion to sever InfiNet's cross-complaint from Wendt's complaint. We subsequently ordered the two appellate proceedings consolidated.

## DISCUSSION

The issues presented in the appeal and the writ are the same. InfiNet alleged AMICO breached the policy's duty to defend and implied covenant of good faith and fair dealing by refusing to defend and indemnify InfiNet on the underlying Suburban and Wendt complaints and in various workers' compensation proceedings. AMICO contends there was no potential for coverage for InfiNet, and it is entitled to summary judgment in both actions, because InfiNet was not a named insured on the policy and InfiNet failed to establish it is an intended third party beneficiary of the policy.

On appeal, we independently review summary judgment rulings. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant moving for summary judgment bears the burden of demonstrating that one of the elements of the cause of action "cannot be established, or that there is a complete defense . . . . " (Code Civ. Proc., § 437c, subd. (p)(2); see also *Aguilar v. Atlantic Richfield Co., supra*, 25 Cal.4th at p. 850.) Once sufficient evidence is produced to meet this burden, the onus shifts to the plaintiff to provide sufficient evidence to demonstrate that a triable issue of material fact exists. (Code Civ. Proc., § 437c, subd. (p)(2).)

### A. *No Duty to Defend or Indemnify*

It is well established "a liability insurer owes a broad duty to defend its *insured* against claims that create a potential for indemnity." (*Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792], italics added.) But where there is no potential for coverage, there is no duty to defend. (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 39 [36 Cal.Rptr.2d 100, 884 P.2d 1048].)

The duty to defend is contractual in nature. (*Alex Robertson Co. v. Imperial Casualty & Indemnity Co.* (1992) 8 Cal.App.4th 338, 343 [10 Cal.Rptr.2d 165].) "Furthermore, expectations of coverage must be reasonable in light of the plain language of the policy. [Citation.]" (*Ibid.*) The policy in this case covers workers' compensation claims against the "insured," defined as "an employer named in Item 1 of the Information Page" of the policy, which in

turn identifies only Omne Staffing as an insured. There is no other language in the policy identifying any additional insureds. Thus, both trial courts properly concluded AMICO had met its initial burden to establish there was no coverage for InfiNet under the policy because it was not a named insured. The burden then shifted to InfiNet to demonstrate the policy was expressly intended for its benefit. (Civ. Code, § 1559 ["[a] contract, made expressly for the benefit of a third person, may be enforced by him"].)

For InfiNet to qualify as a third party beneficiary of the policy, it must show the policy was procured expressly for its benefit, or that it is a member of the class of persons for whose benefit it was procured. (*Diamond Woodworks, supra,* 109 Cal.App.4th at pp. 1039–1040.) It cannot enforce the contract just because it would receive some benefit from its performance. (*Ibid.*)

InfiNet seeks to establish coverage by invoking section 3602, subdivision (d). It argues pursuant to that section, as a matter of law, it is in the class of person for whose benefit the insurance contract between Omne Staffing and AMICO was made. We disagree.

■ Section 3602 embodies the workers' compensation exclusive remedy rule. Every employer must secure workers' compensation insurance (§ 3700), and workers' compensation is the exclusive remedy for an injured worker against his or her employer. One exception to the exclusive remedy rule is when the employer fails to secure payment of workers' compensation. (§ 3706.)

Section 3602, subdivision (d), provides ". . . an employer may secure the payment of compensation on employees provided to it by agreement by another employer by entering into a valid and enforceable agreement with that other employer under which the other employer agrees to obtain, and has, in fact, obtained workers' compensation coverage for those employees. In those cases, both employers shall be considered to have secured the payment of compensation within the meaning of this section and [s]ections 3700 and 3706 if there is a valid and enforceable agreement between the employers to obtain that coverage, and that coverage . . . has been in fact obtained . . . . [¶] Employers who have complied with this subdivision shall not be subject to civil, criminal, or other penalties for failure to provide workers' compensation coverage or tort liability in the event of employee injury, but may, in the absence of compliance, be subject to all three."

InfiNet's argument is premised on its claim it is, or might be, a co-general employer of the injured workers. It argues that under section 3602, subdivision (d), if an employee has more than one employer, if any one of those employers has workers' compensation insurance, then *all* employers, special or general, are deemed third party beneficiaries of the policy. That is not what the statute says.

Subdivision (d) was added to section 3602 in 1995 (Assem. Bill No. 914 (1995–1996 Reg. Sess.)), in direct response to the *Douglas Oil* case. (*Douglas Oil Company of California v. Western Asphalt Service* (Feb. 10, 1994, B038895), review granted June 20, 1994, review dismissed Aug. 18, 1994 (S038017).) In that case, an injured worker was employed by a general employer (the employee leasing company), and a special employer (the client company). Pursuant to its agreement with the special employer, the general employer obtained workers' compensation insurance which provided benefits for the injured employee. Nonetheless, the injured worker brought a civil tort action against the special employer. *Douglas Oil* held to comply with section 3700, both the general employer (the employee leasing company) and the special employer (the client company) had to purchase a workers' compensation policy. Because the client company had not obtained its own policy, it was not protected by the exclusive remedy rule.

Section 3602, subdivision (d), was enacted "to allow general and special employers to come to an agreement to ensure that the workers are fully covered by workers' compensation insurance but not to burden both employers with redundant premium payments." (Assem. Com. on Insurance, Rep. on Assem. Bill No. 914 (1995–1996 Reg. Sess.) May 2, 1995, p. 3; see also Sen. Com. on Industrial Relations, Analysis of Assem. Bill No. 914 (1995–1996 Reg. Sess.) July 12, 1995, p. 1 [purpose of § 3602, subd. (d), was "[t]o permit an employer to satisfy the requirement to secure the payment of workers' compensation for employees provided by another employer by entering into a 'valid and enforceable agreement' with the other employer to provide coverage for the workers"].)

Even were it to turn out that with regard to any particular injured worker, InfiNet was acting as a co-general employer, that does not make InfiNet an intended third party beneficiary of the AMICO policy by virtue of section 3602, subdivision (d).[5] "Section 3602, subdivision (d)[,] provides only that

---

[5] We specifically do not decide whether InfiNet was a co-general employer of the injured workers. Accordingly, we need not decide whether AMICO's allegations in unrelated workers' compensation proceedings constitute evidence InfiNet was a co-general employer. Nor need we consider the effect of InfiNet's specific allegations in its own pleadings in these consolidated cases it was merely a "matchmaker" and was not "a general employer of any kind."

when an employee is provided by his employer to a second employer, the second employer need not separately secure workers' compensation insurance if (1) he enters a valid agreement under which the original employer agrees to and does obtain workers' compensation coverage[,] and (2) the original employer in fact secures coverage under subdivisions (a) or (b) of section 3700." (*Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 985, fn. 12 [101 Cal.Rptr.2d 325]; see also *Tilley v. CZ Master Assn.* (2005) 131 Cal.App.4th 464, 480, fn. 10 [32 Cal.Rptr.3d 151].)

InfiNet has not established it satisfies any of the statute's requirements. InfiNet did not contract with Omne Staffing to lease employees, nor did it contract with Omne Staffing to obtain workers' compensation insurance to cover workers InfiNet had borrowed. There is no evidence of any other agreement between InfiNet and Omne Staffing whereby Omne Staffing agreed to obtain insurance on InfiNet's behalf. There is no evidence InfiNet paid fees to Omne Staffing representing premiums for insurance.

InfiNet cites *Diamond Woodworks, supra,* 109 Cal.App.4th 1020, for the proposition that if one coemployer has procured workers' compensation insurance, then by law all coemployers are third party beneficiaries of the policy. Its reliance is misplaced. *Diamond Woodworks* addressed section 3602, subdivision (d), in the very context the statute envisioned. A general employer (the employee leasing company) obtained workers' compensation insurance from the defendant insurance company pursuant to an agreement with the special employer (the client company). The insurer later denied workers' compensation coverage for the client company's injured worker contending the client company was not an insured. The court concluded *the client company* was an intended third party beneficiary of the insurance policy. "[The employee leasing company] purchased the . . . policy for the very purpose of fulfilling its promise to [the client company] to obtain workers' compensation insurance for the leased employees; the cost of the premiums was included in the fees [the client company] paid to [the employee leasing company]. The . . . insurance policy provided the promised coverage, thereby securing not only for [the employee leasing company] but for [the client company] the protection of . . . section 3602, subdivision (d). This was not an incidental benefit to [the client company]; it was at the very heart of the employee leasing contract and the insurance policy." (*Diamond Woodworks, supra,* 109 Cal.App.4th at pp. 1040–1041.) It was in this context that the court observed that section 3602, subdivision (d), "confers a third party beneficiary status as a matter of law on *client companies* . . . whose leased employees are injured at work." (*Diamond Woodworks, supra,* 109

Cal.App.4th at p. 1042, fn. 16, italics added.) Nothing in *Diamond Woodworks* suggests all possible general employers are third party beneficiaries of the policy as a matter of law.

■ In conclusion, there is no evidence from which it could be concluded that InfiNet was of a class of persons for whose benefit the policy was purchased. Accordingly, AMICO had no duty to defend or indemnify InfiNet.

## B. *No Breach of Covenant of Good Faith and Fair Dealing*

■ Because InfiNet is neither a named insured nor a third party beneficiary of the AMICO policy, its cause of action for breach of the implied covenant of good faith and fair dealing fails as well. It is well established that " '[p]rivity of contract with the insurer is essential to an implied covenant action against the insurer.' [Citation.] 'Whether for better or worse . . . liability for "bad faith" has been strictly tied to the implied-in-law covenant of good faith and fair dealing arising out of an underlying contractual relationship. Where no such relationship exists, no recovery for "bad faith" may be had. [Citation.] [¶] . . . [¶] [Thus], an insurer's duty of good faith and fair dealing is owed solely to its insured and, perhaps, any express beneficiary of the insurance policy.' [Citation.]" (*Seretti v. Superior Nat. Ins. Co.* (1999) 71 Cal.App.4th 920, 929 [84 Cal.Rptr.2d 315].)

## C. *Declaratory Relief*

InfiNet contends it is entitled to maintain its declaratory relief cause of action against AMICO to obtain a declaration of the client companies' rights under the AMICO policy. We disagree.

Code of Civil Procedure section 1060 provides "Any person interested under a . . . contract, . . . may, in cases of actual controversy relating to the legal rights and duties of the respective parties, bring an original action or cross-complaint in the superior court for a declaration of *his or her rights and duties* in the premises, including a determination of any question of construction or validity arising under the instrument or contract." (Italics added.)

■ An intended beneficiary of an insurance policy who is denied coverage may seek declaratory relief. (See *Omaha Indemnity Co. v. Superior Court* (1989) 209 Cal.App.3d 1266, 1270 [258 Cal.Rptr. 66].) But as we have already explained, InfiNet is not an intended beneficiary of the policy. Accordingly, it has no standing to assert any rights under the policy.

We specifically do not decide here whether the client companies are intended third party beneficiaries of the AMICO policy or whether there is coverage for their injured workers under the policy. Therefore, it would be improper to cite this opinion as supporting in any way the preclusion of coverage for the injured workers of the client companies. These summary judgment motions concern only InfiNet's cross-complaints against AMICO. That InfiNet would derive a tangential benefit from a finding there is coverage for third parties does not confer upon it standing to enforce the policy to which it is a complete stranger. " 'A third party's right to enforce covenants of a contract is predicated on the contracting parties' intent to benefit the third party. [Citation.] It is not enough that a literal interpretation of the contract would result in a benefit to the third party. [Citation.]' [Citation.]" (*City of Hope v. Bryan Cave, L.L.P.* (2002) 102 Cal.App.4th 1356, 1370 [126 Cal.Rptr.2d 283].)[6]

## DISPOSITION

*The Appeal: G036312*

The judgment in Orange County Superior Court case No. 04CC07426 is affirmed.

*The Writ: G036248*

The petition for writ of mandate in Orange County Superior Court case No. 04CC09215 is granted. Respondent court is ordered to vacate its decision denying the motion of American Motorists Insurance Company for summary judgment on the cross-complaint, enter a new and different order granting the motion, and enter judgment on the cross-complaint in favor of American Motorists Insurance Company. Our order to show cause is discharged and the stay is dissolved.

---

[6] Since InfiNet is not an insured or a third party beneficiary we need not consider its argument concerning the enforceability of the policy's deductible endorsement.

*Costs*

American Motorists Insurance Company is awarded its costs on the appeal and in the writ proceedings.

Sills, P. J., and Moore, J., concurred.

A petition for a rehearing was denied April 24, 2007, and the opinion was modified to read as printed above.