[L. A. No. 20455.   In Bank.   Nov. 16, 1948.]

CHARLES S. KING Appellant, v. J. S. SMITH et al., Defendants; JOHN CAWOG et al., Respondents.

Lyman A. Garber for Appellant.

Oliver O. Clark, Robert A. Smith, Hugo A. Steinmeyer, G. L. Berrey and Geo. L. Beckwith for Respondents.

CARTER, J.—This appeal involves a controversy over $3,000 and $800, which plaintiff claims.

It appears that Emma C. Arenz was the owner of an hotel property which she leased to defendant Cawog. Cawog subleased the property to defendant Smith for a rental of $600 or $1,350 a month (there is conflict as to the amount). The sublease transaction was handled through an escrow in which defendant Bank of America National Trust and Savings Association was the escrow holder. In that transaction the sum of $3,000 was deposited with the bank to assure the payment by Smith to Cawog of the rent under the sublease. Smith having defaulted on the rent, two successive judgments were obtained against him by Cawog aggregating $2,632.55. Execution thereon was levied on the bank which paid them from the $3,000.

In this action for declaratory relief and money had and received plaintiff seeks to recover the $3,000 from Cawog and the bank, asserting that he put up that sum as guarantor of Smith that the latter would pay the rent under the lease; that by reason of the statute of frauds (a contract to answer for the default of another must be in writing, Civ. Code, § 1624(2)), alteration of the principal obligation and other rules of law applicable to a guaranty relation, Cawog had no right to take nor the bank to release any portion of the $3,000. If, however, his relation to the transaction was not that of a guarantor, then it follows that Cawog properly received the money on his execution and the bank properly paid it, leaving plaintiff's claim without foundation.

The court found that there was no guaranty relationship, but on the contrary, that plaintiff *loaned* the $3,000 to Smith which the latter deposited with the bank as *his* guarantee of the payment by him of the rent under the sublease. There is no doubt that if Smith was the guarantor rather than plaintiff, such guaranty was valid and enforceable inasmuch as he signed the escrow instructions involving the sublease and therein agreed to deposit $3,000 with the bank to "guarantee" his performance of the sublease; that if the $3,000 was loaned

by plaintiff to Smith rather than deposited by plaintiff as a guarantee for Smith, then plaintiff's only recourse is against Smith. (He obtained a judgment against Smith which is not here involved.) Plaintiff claims that the evidence is insufficient to show his part in the transaction to be a loan to Smith but on the contrary establishes a guaranty relation.

We believe the evidence is sufficient to support the court's findings.

The evidence shows that while Smith and Cawog were negotiating the sublease, they came to see plaintiff who knew Smith but not Cawog. Smith told plaintiff about his deal to sublease the hotel from Cawog and that he had to have some money. All three went to the bank where plaintiff transacted his business. He took $3,000 from his safe deposit box. This $3,000 was deposited with the bank in the escrow embracing the sublease transaction. It is the nature of that transaction that is vital.

According to plaintiff's testimony he deposited the $3,000 with the bank to "guarantee" the performance by Smith of the sublease; that he delivered the $3,000 to the bank; and that he did not loan the money to Smith. There is in evidence a receipt in which the bank acknowledged receiving from plaintiff the sum of $3,000, but nothing is said therein concerning the purpose it was to serve. It bore a notation of an escrow number which corresponded with the escrow number of the sublease escrow.

Opposed to the above evidence is the following: Cawog testified that *Smith* delivered the $3,000 to the bank and that he did not know where Smith got it, from which it may be inferred that it was Smith's money rather than plaintiff's, that is, that Smith had obtained it from plaintiff as a loan and that he (Smith) was posting it as security for the performance of the sublease; that he (Cawog) went with Smith from Los Angeles to Oxnard (where plaintiff lived and the bank was located) to get money to guarantee the performance of the sublease, from which it may be inferred that Smith was getting the money as his own to post as security. Plaintiff testified in relation to the $3,000 transaction that *Smith* told him: "*I* will give this $3,000 so you can leave it up there as *my* money, and in about eight or nine months —" [Italics added], which implies that the $3,000 deposited at the bank was to be *Smith's* money—a loan to Smith. He further testified that he did not see or read the sublease or the escrow instructions— did not know whether the former had been signed when he

claimed he deposited the $3,000 as a guaranty. This is an unusual practice for a person who claims he was the guarantor of a sublease, and casts doubt on his testimony that he made the deposit to guarantee its performance. His only explanation being that he left everything to Mr. Elmelund, an agent of the bank; that he gave no one any authorization with reference to the disposition of the $3,000; that Smith told him he would pay the money back to him and that he was perfectly satisfied with Smith's word on it—language usually associated with a loan of money. It further appears that sometime after the $3,000 transaction, Smith, accompanied by Cawog, went to see plaintiff about getting more money to meet his obligation under the sublease from Cawog, and plaintiff made no inquiry concerning whether Cawog had resorted to the $3,000 allegedly put up by him as a guaranty. ■ Plaintiff had known Smith previous to the pertinent dealings, but Cawog was a stranger to him and it is deducible from the evidence that his agreement to furnish $3,000 was primarily, if not wholly, addressed to Smith rather than Cawog, and in that connection it has been stated, that there is not a contract to answer for the debt of another within the statute of frauds where the alleged guarantor promises the *debtor*, rather than the creditor to pay the former's debt. (*Garroway* v. *Jennings,* 189 Cal. 97 [207 P. 554]; *Kale* v. *Bankamerica Agr. Credit Corp.*, 2 Cal.App. 2d 113 [37 P.2d 494]; *Lawson* v. *Anderson*, 97 Cal.App. 499 [275 P. 993]; Williston on Contracts [rev. ed.] § 460.)

■ Finally, in the escrow instructions concerning the sublease signed by Cawog and Smith, it was agreed by them that Smith would deposit $3,000 with the bank in escrow to guarantee the performance by him of the sublease to be released to Smith on written agreement between him and Cawog. While it may be that these declarations in the instructions are not binding on plaintiff inasmuch as he was not a party thereto and did not see them, yet they have a bearing upon the intent, and frame of mind and understanding of the alleged principal and debtor, Smith, and the alleged beneficiary of the guaranty, Cawog.

From all the circumstances, and considering that the issue is largely a factual one of the intent of the parties (see, *Ackley* v. *Prime,* 99 Cal.App. 534 [278 P. 932]; Williston on Contracts [rev. ed.], § 465), it must be concluded that the evidence was sufficient to support the finding of a loan— the conclusion that title to the $3,000 was in Smith. This conclusion cannot be affected by plaintiff's claim of a pre-

sumption and estoppel against the bank and Cawog because of their failure to call as witnesses the bank's representatives or take the deposition of Smith who was in prison and the existence of the receipt given by the bank. These contentions present nothing more than the existence of a conflict in the evidence which the trial court has resolved against plaintiff.

As has heretofore been seen, there was also an item of $800 involved. It appears to be plaintiff's theory that the loan of that sum from plaintiff was negotiated by both Smith and Cawog, that Cawog defrauded plaintiff in connection with it, and that therefore Cawog is liable for it. The court found against those contentions. Plaintiff testified that on July 20th (the sublease transaction occurred the preceding February) Smith and Cawog called on him and Smith told him he was in a "lot of trouble"—had "just got out of the can" as the vice squad had picked him up; that to plaintiff's inquiry of what he wanted him to do, Smith said he had to pay Cawog $800 and that he (plaintiff) had to save him; that Cawog said Smith owed him $800 for rent—that that amount would clear Smith; that plaintiff thereupon gave Smith a check for $800 and he gave it to Cawog. A few days later Cawog commenced an action against Smith for rent in a considerably greater amount.

On the other hand Cawog testified that he told plaintiff that Smith was in default to the extent of $1,899, and he did not tell him the sum was $800.

Plainly there is sufficient evidence to support the court's finding against plaintiff's contention. While it is true that a few days after the $800 transaction, Cawog filed suit against Smith for nearly twice the sum of $800, apparently giving no credit for a payment of that sum, all we have is an apparent inconsistency in the testimony which was resolved by the trial court.

For the foregoing reason, the judgment is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied December 13, 1948.