[Civ. No. 28321.   Second Dist., Div. Three.   Apr. 7, 1966.]

20TH CENTURY CIGARETTE VENDORS et al., Plaintiffs and Respondents, v. VINCENT SHAHEEN, Defendant and Appellant.

Jones & Weldon, Danny R. Jones and Herbert W. Stoltenberg for Defendant and Appellant.

Caidin, Bloomgarden & Kalman and Stanley R. Caidin for Plaintiffs and Respondents.

KAUS, J.—Defendant Vincent Shaheen appeals from a judgment in the sum of $5,500 entered against him and his codefendants Albert J. Shaheen and Ralph E. Smith.

There is relatively little dispute concerning the factual background which gave rise to the alleged liability of defendant Vincent Shaheen:[1] On June 7, 1960, three individuals, Bob Arrowood—who was named as a defendant but not served —Ralph Smith and Albert borrowed $5,500 from plaintiffs on an unsecured promissory note payable in 18 monthly installments beginning September 1, 1960. In case of default plaintiffs had the option to accelerate the note. The money was used to purchase real property in San Bernardino County where the three men planned to develop a bowling alley. They ran into financial difficulties and on or about August 12, 1960, the property was conveyed to Vincent with the understanding that he would attempt to develop the project. He was not successful and about the time when the present action was filed on February 27, 1961, conveyed the property to a corporation operated and controlled by his brother Tom. Although at the time of trial in February 1963, a 32-lane bowling alley was operating on the property, Vincent professed not to know whether his brother Tom's corporation was the owner, who developed the property, or who the tenant was. The sole consideration Vincent received for the conveyance was about $750 for bad checks of Arrowood which he had made good.

So much for the undisputed facts. It will be noted that when the action was filed the property was still in Vincent's name.[2] The complaint contained two causes of action, one

---

[1]Three brothers, the defendant and appellant Vincent Shaheen, the defendant Albert J. Shaheen, who has not appealed, and one Tom Shaheen, not a party, are among the *dramatis personae*. For clarity and brevity we will refer to them, from time to time, by their first names.

[2]The deed was dated February 21, 1961, six days before the filing of the complaint. It was recorded in April 1961.

against Arrowood, Smith and Albert on the note. This liability was never seriously in dispute and judgment for plaintiffs was given as a matter of course. The second cause of action against Vincent was designated as a count "to set aside fraudulent conveyance." As originally phrased it alleged briefly that the sole purpose of the conveyance to Vincent was to place the property beyond the reach of the creditors of the makers of the note and prayed that he be declared the constructive or "actual" trustee for the benefit of the makers, that the conveyance be invalidated and held subject to the claims of creditors of the makers.

The parties then prepared a joint pretrial statement in which they stipulated that one of the issues was: "whether or not defendant Vincent Shaheen was acting as constructive trustee for plaintiffs as alleged in plaintiffs' complaint." When the matter was called for pretrial, however, no formal pretrial conference order was entered because of the estimate of the time required for the trial (Cal. Rules of Court, rule 221) and the parties stipulated that the complaint might be amended in certain respects. Principally this concerned an enlargement of the request for relief under the second cause of action to include a prayer that Vincent be charged personally "in the event he disposed of said property or any proceeds derived therefrom prior to trial."

At the trial the plaintiffs proved that at the time of the conveyance of the real property to Vincent, Smith, one of the makers of the promissory note, had a telephone conversation with Vincent. At that time he had been told by Arrowood and Albert that the property would be transferred to Vincent and that Vincent would take care of all outstanding debts. The purpose of the telephone call was to confirm this arrangement. Vincent said that he would pay all debts.

Mr. Gootkin, the president of the plaintiff 20th Century Cigarette Vendors called Vincent in September 1960 and was assured that within a short time the note would be paid and that there was nothing to worry about.

Mr. Weymouth, the vice president of the plaintiff Arrowhead Vending Machine Company called Vincent a few weeks later. He asked him when payment could be expected and Vincent said that he would take care of the obligation and would be willing to give a note "guaranteed" by a trust deed on the property. This information was confirmed to Mr. Caidin, plaintiffs' counsel.

Mr. Caidin testified that he, too, called Vincent, confirmed the conversation with Weymouth and drew up a note and trust deed which he mailed to him. It was never returned. He called Vincent again to find out ''what was holding up the note'' and Vincent said that he had been busy and he would return it shortly.

Vincent's defense, in a nutshell, was that he had taken over the property only as an accommodation to his brother Albert on the basis that he would use his best efforts to finance it. An unexpected $40,000 mechanic's lien complicated matters, as did the fact that it was discovered that contrary to anticipations, a $160,000 purchase money deed of trust could not be subordinated to a construction loan. He never knew anything about plaintiffs' $5,500 note.

After both sides had rested there followed an informal discussion between court and counsel concerning the applicable law during which certain further amendments to the second cause of action were allowed. They were not material on this appeal. In response to a remark from the court when it was ''thinking aloud'' about the legal ramifications of the case, plaintiffs also moved orally to amend the complaint to conform to proof by adding a third cause of action based on the theory that Vincent was liable to them on the basis of a third party beneficiary contract. Defendants objected on the grounds that there was no evidence to support such a theory, that the statute of limitations ''would be a problem at this time'' and because of the statute of frauds. A formal proposed amendment was then filed and the entire matter taken under submission. Thereafter the court filed a memorandum opinion in which it granted the motion to file the amendment to the complaint and expressed its opinion that judgment should be for plaintiffs. Findings of fact and conclusions of law were thereafter filed and judgment entered. The findings and conclusions point to a judgment in plaintiffs' favor on two theories: 1. constructive trust; and 2. third party beneficiary contract.

Defendants attack the findings, conclusions and the judgment on both alternate grounds. ■ Since we are of the opinion that they are clearly sustainable on the basis of a third party beneficiary contract, we will not attempt to deal with the constructive trust theory. (*Leroy* v. *Bella Vista Investment Co.*, 222 Cal.App.2d 369, 375 [35 Cal.Rptr. 128].)

The following inferences could legitimately be drawn from the evidence: 1. that in consideration of the conveyance of the real property to him, Vincent promised to pay all debts which

the joint venture had accumulated in connection with the bowling alley; 2. that he knew about plaintiffs' note;[3] 3. that the promise was made to the debtors and thereafter confirmed to officers and the attorney for the creditors; and 4. that it was not rescinded.

■ Defendants object that there was no consideration for the promise. We cannot understand why the transfer of a valuable piece of real property is insufficient consideration even if it is more heavily encumbered than anticipated or the legal effect of a subordination clause in a purchase money deed of trust is not quite what the parties had anticipated. It is significant, of course, that Vincent never made any attempt to rescind his agreement with the three debtors, but instead transferred the property to a corporation controlled by his brother Tom.[4] Whether or not the obligations against the property exceeded its fair market value, it obviously had potential.

■ The statute of frauds in no way bars enforcement of the third party beneficiary contract, since the promise to pay the note was made to the debtor. This was established in 1840 in *Eastwood* v. *Kenyon*, 11 A. & E. 438. California law is to the same effect, (*King* v. *Smith*, 33 Cal.2d 71, 74 [199 P.2d 308]; see also 3 Williston on Contracts (3d ed.) § 460; 2 Corbin on Contracts, § 357.)

While we have been unable to find a California case which specifically discusses the question whether a creditor beneficiary of an oral promise made to a debtor may sue thereon, the authorities elsewhere are uniform to the effect that he may. (Williston, *op. cit.*; Corbin, *op. cit.*: "Not only can the promisee maintain suit upon the oral promise, but the creditor can also, suing as a creditor beneficiary of the contract.")

Finally it is claimed that there was an abuse of discretion in permitting the amendment to conform to proof, particularly if the amendment relates back to the filing date of the complaint, thereby defeating the bar of the statute of limitations which is

---

[3]An inference to that effect is not really essential. (*Garratt* v. *Baker*, 5 Cal.2d 745, 748 [56 P.2d 225]; *Shell* v. *Schmidt*, 126 Cal.App.2d 279, 290 [272 P.2d 82].) In any event, even if the specific debt to plaintiffs was not mentioned in the telephone conversation with Smith, Vincent's lack of protest in the conversations with Gootkin, Weymouth and Caidin permitted the court to infer knowledge.

[4]There is of course far more to this case than meets the eye, however as the trial court said in its memorandum opinion: ". . . the record title is—or most recently was—in Cambridge Fund [Tom's corporation] and no point was made of the somewhat suspicious circumstances of the transfer, nor was either Cambridge Fund of Tom Shaheen joined as a party."

claimed to have run on Vincent's oral promise made in August 1960. The amendment was ordered to be deemed filed as of July 24, 1963.[5]

■ Amendments to conform to proof should be liberally granted. (*Youngblood* v. *City of Los Angeles*, 160 Cal.App.2d 481, 489-490 [325 P.2d 587]; cf. *Brautigam* v. *Brooks*, 227 Cal.App.2d 547, 560 [38 Cal.Rptr. 784].) ■ The amendment, at most, changed plaintiffs' legal theory. The modern view is that such an amendment will relate back to the original filing date if it seeks recovery on ''the same general set of facts as those alleged in the original complaint. . . .'' (*Wilson* v. *Bittick*, 63 Cal.2d 30, 37-38 [45 Cal.Rptr. 31, 403 P.2d 159]; *Austin* v. *Massachusets Bonding & Ins. Co.*, 56 Cal.2d 596, 600 [15 Cal.Rptr. 817, 364 P.2d 681].) Unquestionably this is the case here. There is not the slightest showing of prejudice. Although Vincent's brief suggests that he had not been sufficiently apprised of the issues to be met, it is difficult to see what additional evidence could have been produced. The trial judge showed extreme courtesy to counsel throughout the proceedings and there is no doubt that had any application for the taking of additional evidence been presented after the amendment was filed and before the rendition of judgment, it would have been most favorably considered. There was no abuse of discretion.

The judgment is affirmed.

Shinn, P. J., and Ford, J., concurred.

---

[5]Query, however, when Vincent breached the promise.