Filed 4/27/23  Sutton v. Saputo Cheese USA CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TONY SUTTON,<br><br>  Plaintiff and Appellant,<br><br>  v.<br><br>SAPUTO CHEESE USA, INC.,<br><br>  Defendant and Respondent. | F083396<br><br>(Super. Ct. No. VCU278753)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Tulare County.  David C. Mathias, Judge.

Fowler Helsel Vogt, John C. Fowler, for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller and Ernest Slome; Law Office of Thomas J. Burns, Robert D. Bassett, for Defendant and Respondent.

-ooOoo-

Plaintiff/appellant Tony Sutton appeals from the judgment entered following the trial court's grant of summary judgment in favor of defendant/respondent Saputo Cheese USA, Inc. (Saputo).

This case involves the question of the applicability of the exclusive workers' compensation remedy in a dual employment scenario. Sutton was employed by a staffing agency, Select Staffing, and was assigned to temporarily work for another employer, Saputo (Select Staffing was Sutton's direct employer and Saputo was his special employer). Sutton suffered a work-related injury while he was working for Saputo. He subsequently filed the instant action asserting claims of negligence and premises liability against Saputo, while simultaneously pursuing his workers' compensation remedy from Select Staffing (under Select Staffing's workers' compensation insurance policy).

Saputo moved for summary judgment on the ground it was immune from liability under the California Workers' Compensation Act, Labor Code section 3200 et seq. "Subject to certain narrowly defined exceptions, the California Workers' Compensation Act provides the exclusive remedy for injuries arising within the course of employment." (*Pichon v. Pacific Gas & Electric Co.* (1989) 212 Cal.App.3d 488, 494; see Lab. Code, § 3600 [liability for workers' compensation shall, without regard to negligence, exist against an employer for any injury sustained by its employees arising out of and in the course of the employment]; Lab. Code, § 3602 [where the injury is proximately caused by the employment, workers' compensation is the "sole and exclusive remedy" for an employee against his employer].) The Workers' Compensation Act requires employers to "secure the payment of compensation" for employees, either by obtaining liability coverage from an authorized insurer or by self-insuring. (Lab. Code, § 3700, subds. (a),

(b).)[1]  In addition, the Workers' Compensation Act provides:  "If an employer fails to secure the payment of compensation, any injured employee or his dependents may bring an action at law against such employer for damages, as if [this Act] did not apply."  (Lab. Code, § 3706.)

Saputo argued summary judgment was proper because Sutton was eligible for workers' compensation benefits and Saputo, in turn, was immune from suit.  Saputo noted Sutton's injuries occurred in the course of his employment with Saputo, and he was covered under the workers' compensation policy of his *direct employer*, Select Staffing.  As for Saputo's *independent* obligation to secure payment of workers' compensation benefits for temporary workers provided by Select Staffing, Saputo contended it had complied with this requirement by entering into a relevant written agreement with Select Staffing pursuant to Labor Code section 3602, subdivision (d).[2]  Saputo noted that under the agreement, Select Staffing undertook to obtain and did obtain, workers' compensation benefits for employees it provided to Saputo, thereby rendering Saputo in full compliance with the requirements of Labor Code section 3602, subdivision (d).  Saputo also contended that, to the extent the anticipated coverage through Select Staffing turned out

---

[1]  Specifically, Labor Code section 3700 requires employers to "secure the payment of compensation" for employees, by (a) "being insured against liability to pay compensation by one or more insurers duly authorized to write compensation insurance in this state," or (b) securing a certificate of self-insurance from the Director of Industrial Relations.  (Lab. Code, § 3700, subds. (a), (b).)

[2]  Labor Code section 3602, subdivision (d), provides:  "For the purpose of this division, including Sections 3700 and 3706, an employer may secure the payment of compensation on employees provided to it by agreement by another employer[,] by entering into a *valid and enforceable agreement* with that other employer under which the other employer agrees to obtain, and has, in fact, obtained workers' compensation coverage for those employees.  In those cases, *both employers* shall be considered to have secured the payment of compensation within the meaning of this section."  (Italics added.)

to be unavailable for any reason, Saputo's *own* workers' compensation policy would kick in to cover any affected temporary employees provided by Select Staffing (including Sutton).

Sutton, for his part, argued that the written agreement between Saputo and Select Staffing did not *expressly* obligate or provide for Select Staffing to procure workers' compensation coverage for employees it assigned to work for Saputo. Sutton contends that the lack of an *express* provision to this effect in the agreement precluded Saputo from relying on the immunity provisions of the Labor Code and opened the door for Sutton to bring the instant personal injury action against Saputo. On a different note, Sutton argued that Saputo's summary judgment motion should have been denied because Saputo did not plead workers' compensation exclusivity as an affirmative defense in its answer to Sutton's complaint.

Sutton also raised evidentiary objections to various items of evidence adduced by Saputo in support of its motion for summary judgment. For example, Sutton objected, on grounds of relevance and authentication, to the written agreement between Saputo and Select Staffing and certain certificates of insurance, all of which were adduced by Saputo in support of its summary judgment motion.

The trial court overruled Sutton's evidentiary objections and granted summary judgment in Saputo's favor. The court concluded the agreement between Saputo and Select Staffing required Select Staffing to obtain (and Select Staffing did obtain) workers' compensation coverage for Sutton, and, in turn, the agreement complied with Labor Code requirements for Saputo to be immunized from suit. The trial court further concluded that Saputo was immune from suit because it had its own workers' compensation policy coverage in place at the time of Sutton's injury, which policy would

4.

have provided workers' compensation benefits for Sutton *in the event* Select Staffing's policy failed to do so.

The trial court also rejected Sutton's separate argument that Saputo's failure to plead workers' compensation exclusivity as an affirmative defense precluded summary judgment. The court found Sutton's complaint alleged the existence of an employment relationship and that Sutton sustained his injury in the course of his employment. The court determined those allegations were sufficient to put in play the question of the applicability of workers' compensation exclusivity and Saputo was entitled to raise that defense on summary judgment.

Sutton appeals. He contends the trial court erroneously granted summary judgment in favor of Saputo and further erred in overruling his objections to Saputo's evidence. We reject all of Sutton's claims on appeal and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Saputo's Contract with Select Staffing

In January 2011, Saputo entered into a "Standard Client Service Agreement" (agreement or contract) with Select Staffing, pursuant to which Select Staffing agreed to provide temporary employees to Saputo to work at Saputo's facilities. The copy of the agreement adduced by Saputo is signed by Saputo but unsigned by Select Staffing.

The agreement provided that Select Staffing reserved the right to adjust its service rates to compensate for mandatory adjustments to various employee benefits, including workers' compensation, and any federal or state mandated programs or benefits. The rates Select Staffing would charge Saputo were set forth in a rate sheet attached to the agreement. In addition, under the agreement, Select Staffing was responsible for

defending and indemnifying Saputo from any workers' compensation claims or lawsuits brought by Select Staffing workers employed at Saputo.

Christine Hedrick, Saputo's human resources director, was deposed as Saputo's person most qualified regarding the negotiation, formation, understanding, and performance of the contract between Saputo and Select Staffing. Hedrick testified that Select Staffing was required by Saputo to, and did, procure workers' compensation insurance to cover employees it assigned to work at Saputo. Hedrick explained that Select Staffing provided Saputo annually with a certificate of insurance demonstrating it had procured workers' compensation insurance for these temporary employees. Hedrick noted that Select Staffing and Saputo understood, based on the written agreement between them and related conversations, that Select Staffing was responsible for providing this coverage and the latter's annual provision of a certificate of insurance both effected and reflected the parties' mutual understanding.

Hedrick also testified that, as further protection for unexpected or unanticipated situations—such as when a staffing agency went belly up—Saputo had its own workers' compensation insurance policy that would kick in to provide workers' compensation coverage to employees of staffing agencies working at Saputo. This secondary insurance would be triggered in the event the relevant staffing agency's workers' compensation insurance coverage failed or became unavailable for any reason.

Hedrick confirmed the 2011 agreement between Saputo and Select Staffing remained in force for several years, with Select Staffing periodically revising its rates over the years. Pursuant to the agreement, Select Staffing assigned Sutton to work at Saputo in August 2017.

**B.     Sutton Suffered a Workplace Injury at Saputo's Plant**

On or about August 19, 2017, Sutton, a forklift operator, was working at Saputo's warehouse loading dock unloading a trailer with a forklift.  After Sutton was done, he retracted the automated dock plate used to bridge the gap between the loading dock and the edge of the trailer bed.  He thereafter went to pull down the rear rollup trailer door.  As he did so, the dock plate unexpectedly lowered and pinned his torso against the trailer door, causing him to suffer serious injury.

Sutton was acting within his job duties at Saputo when the injury occurred.  Saputo was his special employer; his general employer, Select Staffing, had assigned him to work for Saputo at the latter's plant.  Select Staffing's workers' compensation insurance provided compensation benefits to Sutton for the injuries he suffered.

**C.     Sutton Filed Suit Against Saputo**

In May 2019, Sutton filed a complaint against Saputo, Select Staffing, and other defendants.  As to Saputo, Sutton asserted causes of action for negligence and premises liability.  Sutton alleged Saputo was negligent in that it knew or should have known that the dock plates were not safe and it unreasonably failed to institute and train workers in procedures to prevent the automated dock plates from unexpectedly lowering and causing injury.  Sutton further alleged that Saputo did not secure the payment of workers' compensation benefits for employees like him who were sent to Saputo by Select Staffing, and that consequently, pursuant to Labor Code section 3706,[3] he was entitled to sue Saputo in tort.

---

[3]     Labor Code section 3706 provides:  "If any employer fails to secure the payment of compensation, any injured employee or his dependents may bring an action at law against such employer for damages, as if [the Workers' Compensation Act] did not apply."

7.

Sutton's second cause of action for premises liability was based on the same factual allegations as his negligence claim, including an allegation to the effect Saputo did not secure the payment of workers' compensation benefits for employees like him.

**D.      Saputo Moved for Summary Judgment**

After the parties proceeded with discovery, Saputo moved for summary judgment. Saputo noted Sutton was injured while he was engaged in the course and scope of his employment with Saputo and was covered by workers' compensation policies maintained by both Select Staffing, his direct employer, and by Saputo, his special employer.

Sutton opposed the summary judgment motion and objected to much of Saputo's evidence.  Preliminarily, Sutton objected on grounds of hearsay, authentication, and relevance, to the written agreement between Saputo and Select Staffing and the certificates of insurance proffered by Saputo.  Sutton next claimed Saputo had waived a defense based on workers' compensation exclusivity by not expressly pleading it as an affirmative defense in its answer to the complaint.  Finally, Sutton contended summary judgment was precluded by the existence of triable issues of material fact as to whether Saputo had secured payment of workers' compensation benefits for him as required by the Labor Code.

**E.      The Trial Court Granted Saputo's Motion for Summary Judgment**

The trial court, in a tentative ruling, overruled Sutton's objections to Saputo's evidence and granted Saputo's summary judgment motion.  Upon hearing oral argument following the issuance of its tentative ruling, the court adopted the tentative ruling as its final ruling, thereby granting summary judgment in favor of Saputo.  Specifically, the trial court ruled:

> "Plaintiff seeks damages for personal injuries suffered while working in Defendant Saputo Cheese USA, Inc.'s facility in Tulare County.  Defendant moves for summary judgment.

"Summary judgment is granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) '[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact.' (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850.) The moving party bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. (*Ibid*.)

"Plaintiff's Request for Judicial Notice is granted. Plaintiff's objections to the [deposition] of Christine Hedrick numbered 1 through 15 are overruled. Plaintiff's objection to the 2011 Standard Client Service Agreement (objection number 16) is overruled. Plaintiff's objection to the Certificate of Liability Insurance for Select Staffing dated January 25, 2017 (objection number 17) is overruled. Plaintiff's objection to the Certificate of Liability Insurance for Saputo Cheese USA, Inc. dated December 20, 2016 (objection number 18) is overruled.

"Defendant submits undisputed facts establishing that it operated the facility at which Plaintiff suffered injuries [citation], that Saputo used temporary workers from Select Staffing [citation], and that Plaintiff was employed by Select Staffing and was assigned to work at Saputo's facility on the date Plaintiff was injured [citation].

"Defendant asserts it is entitled to summary judgment because Plaintiff's claims are barred by the exclusive remedy of Worker's Compensation. (Labor Code 3600, *et seq*.)

"Plaintiff contends Defendant did not assert Worker's Compensation exclusivity as an affirmative defense in its answer to Plaintiff's Complaint and cannot assert the defense for the first time on summary judgment. (*Doney v. Tambouratgis* (1979) 23 Cal.3d 91; see also *Dorado v. Knudsen Corp*. (1980) 103 Cal.App.3d 605, 610.)

"Defendant has provided persuasive authority that the allegations of Plaintiff's Complaint asserting an employment relationship and asserting injury while in the course of employment are sufficient to support Defendant's contention that Workers' Compensation coverage is presumed

9.

and sufficient to enable Defendant to raise the exclusivity defense on summary judgment. (*Doney*, *supra*, at p. 97; and *Gibbs v. Am. Airlines, Inc.* (1999) 74 Cal.App.4th 1, 12-13.) Defendant's affirmative defenses asserted in its answer were also sufficient to give Plaintiff notice that Defendant would assert a Worker's Compensation defense.

"Plaintiff asserts Defendant did not secure Worker's Compensation insurance covering Plaintiff. Defendant has provided evidence of its coverage and evidence the coverage would extend to Plaintiff. Plaintiff's out of context references to the statements of Christine Hedrick are not persuasive. Defendant has shown that it had Worker's Compensation insurance coverage in place at the time of Plaintiff's injury. Defendant contends Plaintiff never made a claim for Worker's Compensation benefits to Defendant. Plaintiff's evidence is insufficient to establish that Defendant was uninsured and insufficient to establish that Defendant lacked Worker's Compensation coverage for Plaintiff's injuries.

"Defendant asserts Worker's Compensation coverage for Plaintiff was provided by Select Staffing. Defendant has provided evidence of such coverage. Plaintiff has not provided evidence sufficient to dispute Defendant's contentions that Worker's Compensation benefits for Plaintiff were available through a policy maintained by Select Staffing. Plaintiff's arguments that Worker's Compensation coverage by Select Staffing was not sufficient to satisfy Defendant's obligation to provide coverage are not persuasive. Plaintiff has admitted that he was an employee of Select Staffing and assigned to Defendant by Select Staffing. Plaintiff was a co-employee of Select Staffing and Defendant. Plaintiff has not provided evidence sufficient to dispute Defendant's contention that Worker's Compensation insurance sufficient to cover Plaintiff's injuries provided by either Select Staffing or Defendant was sufficient to meet Defendant's insurance obligations under the Worker's Compensation Act. (Labor Code 3602; *Collins v. Union Pac. R.R.* (2012) 207 Cal.App.4th 867, 876.)

"Plaintiff's contentions that the agreement between Select Staffing and Defendant [was] not enforceable are not persuasive. The agreement was prepared by Select Staffing. That the document relied on by Defendant was not signed by Select Staffing is not sufficient to show the agreement is unenforceable. The agreement was in place years before Plaintiff's injuries and was performed by both parties to the agreement. In addition, Plaintiff has not provided evidence to dispute Defendant's contention that Select Staffing had in place Worker's Compensation insurance at the time of

10.

Plaintiff's injuries as Defendant asserts was required as part of its agreement with Select Staffing. Plaintiff's assertion that Defendant was required to be named an additional insured under the Select Staffing policy lacks legal support under the statute.

"The court finds Defendant has shown its submitted material facts … are not reasonably disputed. The submitted facts are sufficient to establish that there remain no disputed issues of material fact to be determined in this action and that Defendant is entitled to summary judgment as a matter of law."

## F.    The Trial Court Denied Sutton's Motion for Reconsideration

Sutton subsequently moved for reconsideration of the court's summary judgment order, based on a letter from Saputo's workers' compensation insurer denying coverage for his claim on grounds that Select Staffing was his employer at the time of the injury and was in fact administering his claim for compensation.

Saputo opposed Sutton's motion for reconsideration arguing the letter denying coverage did not constitute newly discovered evidence and had no bearing on whether Saputo had secured the payment of worker's compensation benefits for Sutton through Select Staffing and, secondarily, through its own workers' compensation policy in the event Select Staffing's coverage became unavailable.

The trial court denied Sutton's motion for reconsideration. The court's ruling stated:

"Plaintiff asserts new evidence supports its claim that Defendant did not have workers' compensation benefits available for Plaintiff's injuries. Plaintiff's argument is not persuasive.

"The document relied on by Plaintiff, on its face asserts the insurance carrier for Defendant Saputo Cheese, USA, Inc. would not provide workers' compensation coverage to Plaintiff because coverage was provided by Select Staffing.

11.

"Defendant asserted in its summary judgment motion that it had workers' compensation insurance and that coverage for Plaintiff would have been available if not provided by Plaintiff's employer, Select Staffing.

"Plaintiff has not disputed the assertion that Select Staffing had worker's compensation coverage in place for Plaintiff's injuries. Plaintiff has not adequately disputed Defendant's contention that Select Staffing was contractually obligated to Saputo Cheese to provide workers' compensation insurance covering Plaintiff's injuries. Defendant Saputo Cheese has provided persuasive authority that because Select Staffing was required to and did provide coverage for Plaintiff's injuries, Defendant Saputo Cheese satisfied its workers' compensation obligations through Select Staffing's policy. (*InfiNet Marketing Services Inc. v. Am. Motorist Ins. Co*. (2007) 150 Cal.App.4th 168, 177-178; *Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 985, fn. 12.)"

The trial court entered judgment in favor of Saputo. Sutton appealed from the judgment.

## DISCUSSION

**I.    Summary Judgment was Properly Granted Because Sutton's Exclusive Remedy is Workers' Compensation, which Precludes the Instant Action**

*A.    Summary Judgment:  Standard of Review*

Any party may move for summary judgment in an action if it is contended that the action has no merit. (Code Civ. Proc., § 437c, subd. (a).)

"Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) This court reviews de novo the trial court's decision to grant summary judgment and we are not bound by the trial court's stated reasons or rationales. [Citation.] [¶] In reviewing a motion for summary judgment, we accept as undisputed fact only those portions of the moving party's evidence that are uncontradicted by the opposing party. In other words, the facts alleged in the evidence of the party opposing summary judgment and the reasonable inferences that can be drawn therefrom are

accepted as true." (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1001 (*Hersant*).) " 'We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.' " (*Conroy v. Regents of University of California* (2009) 45 Cal.4th 1244, 1249-1250.)

"[F]rom commencement to conclusion, the party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he is entitled to judgment as a matter of law. That is because of the general principle that a party who seeks a court's action in his favor bears the burden of persuasion thereon. (See Evid. Code, § 500.) There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof…. [A] plaintiff [moving for summary judgment] bears the burden of persuasion that 'each element of' the 'cause of action' in question has been 'proved,' and hence that 'there is no defense' thereto. (Code Civ. Proc., § 437c, subd. (o)(1).) A defendant [moving for summary judgment] bears the burden of persuasion that 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' thereto. (*Id*., § 437c, subd. (o)(2).)" (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850, fns. omitted.)

### B. Workers' Compensation is the Exclusive Remedy for an Employee's Work-Related Injuries When the Employer Has Complied with Applicable Statutory Requirements

Under Labor Code, section 3602, subdivision (a), the exclusive remedy of an injured employee against his or her employer for a work-related injury is, subject to certain specified exceptions, the right to workers' compensation benefits. (Lab. Code,[4]

---

[4] Subsequent statutory references are to the Labor Code unless otherwise specified.

§ 3602, subd. (a) ["Where the conditions of compensation set forth in Section 3600 concur, the right to recover compensation is, except as specifically provided in this section and Sections 3706 and 4558, the sole and exclusive remedy of the employee or his or her dependents against the employer."].)

An exception to this rule of exclusivity is delineated in section 3706, which provides that when the employer "fails to secure the payment of compensation," the employee may pursue a claim for damages against the employer. Section 3700 prescribes two methods by which an employer must secure the payment of compensation to gain the protection of the exclusive remedy rule: the employer "shall" either (1) be "insured against liability to pay compensation by one or more insurers duly authorized to write compensation insurance in this state" or (2) obtain a certificate of self-insurance from the Director of Industrial Relations. (§ 3700, subds. (a), (b).)

"Labor Code section 3602, subdivision (d), allows an employer that leases or borrows an employee from another employer to fulfill its statutory obligations to obtain workers' compensation insurance by contracting with the other employer for the other employer to obtain such coverage." (*InfiNet Marketing Services, Inc. v. American Motorist Ins. Co*. (2007) 150 Cal.App.4th 168, 171, fn. omitted (*InfiNet*).) Section 3602, subdivision (d), provides, in pertinent part, that "an employer may secure the payment of compensation on employees provided to it by agreement by another employer[,] by entering into a valid and enforceable agreement with that other employer under which the other employer agrees to obtain, and has, in fact, obtained workers' compensation coverage for those employees." (See *InfiNet*, *supra*, at p. 178 ["purpose of section 3602, subd. (d), was '[t]o permit an employer to satisfy the requirement to secure the payment of workers' compensation for employees provided by another employer by entering into a

14.

"valid and enforceable agreement" with the other employer to provide coverage for the workers' "].)

"Section 3602, subdivision (d), was enacted 'to allow general and special employers to come to an agreement to ensure that the workers are fully covered by workers' compensation insurance but not to burden both employers with redundant premium payments.' " (*InfiNet*, *supra*, 150 Cal.App.4th at p. 178.)  Thus, " 'Section 3602, subdivision (d)[,] provides … that when an employee is provided by his employer to a second employer, the second employer need not separately secure workers' compensation insurance if (1) he enters a valid agreement under which the original employer agrees to and does obtain workers' compensation coverage[,] and (2) the original employer in fact secures coverage under subdivisions (a) or (b) of section 3700.' " (*InfiNet* at pp. 178-179; *Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 985, fn. 12 (*Huffman*).)

### C. *Saputo Had a Valid Contract with Select Staffing, Under Which the Latter Agreed to Maintain, and Did Maintain, Proper Workers' Compensation Coverage for Temporary Workers Like Sutton*

Sutton notes that "[t]he basic facts of the case are not in dispute."  He adds he "does not dispute his injuries occurred while working as an employee of both Select Staffing and [Saputo]."  In addition, Sutton unequivocally acknowledges that "it is undisputed for purposes of summary judgment that Select Staffing provided worker's compensation coverage for [his] injuries."

Turning to his primary argument on appeal, Sutton states:  "[T]here are three authorized methods for securing payment of compensation under the [Workers' Compensation] Act – purchasing coverage, self-insuring, or, in the case of dual employment [as relevant here], contracting for another employer to provide the coverage. Failure to secure payment for compensation results in liability for the uninsured employer

15.

as if the worker's compensation law was not enacted. (Lab. Code, §§ 3706, 3602, subd. (d)(2).)" Sutton cites *Huffman*, *supra*, 84 Cal.App.4th at page 987, and *InfiNet*, *supra*, 150 Cal.App.4th at pages 178-179, for the proposition that "the fact that an employee receive[d] worker's compensation benefits from one source does not bar the employee's civil action against an uninsured employer." While acknowledging that Select Staffing had a workers' compensation policy covering him, Sutton contends: "In dispute [here] is whether [Saputo] satisfied its independent obligation as [Sutton's] co-employer to secure payment for worker's compensation insurance coverage."

More specifically, Sutton argues, "[Saputo] had no 'valid or enforceable agreement' within the meaning of the [Workers' Compensation] Act for Select Staffing to purchase coverage on its behalf," as "[t]he [2011 Standard Client Services Agreement's] plain language is silent on the issue." Stated differently, Sutton posits that "[Saputo] failed to offer any evidence that Select Staffing promised to [obtain workers' compensation coverage] on behalf of [Saputo]," and therefore Saputo did not establish that an agreement to this effect existed, or, at a minimum, there is "a triable issue of material fact" on the question. Sutton asserts, "the mere fortuity that Select Staffing had worker's compensation coverage for its own workforce does not satisfy [Saputo's] burden of proving Select Staffing did so pursuant to a contract with [Saputo]." Citing *Huffman*, *supra*, 84 Cal.App.4th at page 987, and *InfiNet*, *supra*, 150 Cal.App.4th at page 178, Sutton notes, "a co-employment relationship with a covered party is insufficient to satisfy the requirements of a valid, enforceable agreement under Section 3602[, subdivision] (d)."

Sutton further contends that Saputo did not secure the payment of compensation for its temporary Select Staffing workers by any other "authorized" method, such as directly purchasing coverage or self-insuring for this purpose. (See § 3700, subds. (a),

16.

(b).)  Sutton argues that Saputo, in turn, cannot avail the protection of the exclusive remedy rule and the immunity from suit it provides.

We reject Sutton's contention that Saputo's evidence failed to establish the existence of a valid and enforceable agreement for Select Staffing to provide workers' compensation coverage for its employees, including Sutton, who were temporarily assigned to work for Saputo.  Rather, we agree with the trial court that the undisputed facts establish that "Select Staffing was contractually obligated to Saputo Cheese to provide workers' compensation insurance" for employees assigned by Select Staffing to work at Saputo's facilities.  We affirm the trial court's conclusion that "Defendant Saputo Cheese satisfied its workers' compensation obligations through Select Staffing's policy," and was thereby in compliance with the requirements of section 3602, subdivision (d) (applicable to dual-employer scenarios), and entitled to the protection of the exclusive remedy rule.

### Analysis

"[W]here general and special employment exist, a plaintiff may look to both employers for workers' compensation benefits, if available … [and] [t]his result does not create a special class of employees who are entitled to double recovery."  (*Collins v. Union Pacific Railroad Co*. (2012) 207 Cal.App.4th 867, 878.)  As explained above, section 3602, subdivision (d) was enacted " 'to allow general and special employers to come to an agreement to ensure that the workers are fully covered by workers' compensation insurance but not to burden both employers with redundant premium payments.' "  (*InfiNet*, *supra*, 150 Cal.App.4th at p. 178, citing legislative history materials; *Tilley v. CZ Master Assn*. (2005) 131 Cal.App.4th 464, 492 & fn. 10 ["In the case of dual employment, one employer can fulfill its obligation by entering into a contract by which the other is required to secure such coverage for the employee."].)

17.

Here, there is no dispute that the only written agreement between Saputo and Select Staffing was the 2011 Standard Client Services Agreement.  The agreement was signed by Saputo but not by Select Services.  Sutton does not argue *in his opening brief*, with respect to this issue, that the agreement was invalid *because it was not signed by Select Staffing*; he has therefore waived that argument.  (*Cahill v. San Diego Gas & Electric Co*. (2011) 194 Cal.App.4th 939, 956 [" ' "When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." ' "].)  In any event, since the agreement had clearly been performed by both parties over a long term (Select Staffing provided temporary employees to Saputo for several years, including Sutton), it was an enforceable agreement on that basis.  (See *Sparks v. Mauk* (1915) 170 Cal. 122, 123 [where both parties had performed under contract and acceded to its terms in practice, the fact that contract was not signed did not invalidate it]; *Pilch v. Milikin* (1962) 200 Cal.App.2d 212, 225-226 [where both parties had acted on an unexecuted agreement and accepted the benefits of their mutual understandings, the agreement was binding].)

The agreement provides:  "This Agreement and any attachments constitute the entire Agreement and neither the Agreement nor any amendment shall be valid or enforceable unless in writing and signed by authorized representatives of both parties."  Saputo contends that, given the above language, "the agreement is plainly not a fully integrated document."  Saputo posits:  "If it was a fully integrated document, the agreement would have had to have been signed by both parties, which it was not."  Saputo further notes:  "By conceding that the agreement is valid despite the fact that it is unsigned, Sutton necessarily concedes that the document is not fully integrated."  Sutton has not persuasively countered Saputo's arguments and we are therefore inclined to conclude the agreement did not represent an integrated agreement.

In any event, even assuming the agreement was fully integrated, courts may consider parol evidence in interpreting an agreement so long as the evidence does not contradict the writing or is not otherwise inconsistent with the writing. (*Hot Rods, LLC v. Northrop Grumman Systems Corp.* (2015) 242 Cal.App.4th 1166, 1175 (*Hot Rods*) ["Ordinarily, even in an integrated contract, extrinsic evidence can be admitted to explain the meaning of the contractual language at issue, although it cannot be used to contradict it or offer an inconsistent meaning."].)

A contract "must be construed as a whole, with the various individual provisions interpreted together so as to give effect to all, if reasonably possible or practicable." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 473.) "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." (*Ibid.*) "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent acts and conduct of the parties." (*Id.* at p. 474.) "The purpose of construction is to ascertain the intent of the parties, and when this intent is ascertained it must take precedence over the literal sense of terms." (*Wilson v. Coffey* (1928) 92 Cal.App.343, 348.)

Here, various terms of the contract and the contract taken as whole, along with admissible extrinsic evidence, establish that the agreement between Select Staffing and Saputo required Select Staffing to provide workers' compensation insurance coverage for the employees it sent to work temporarily for Saputo. The agreement contains a provision obligating Select Staffing to indemnify Saputo from workers' compensation claims by Select Staffing employees working for Saputo, indicating Select Staffing was

obligated to secure workers' compensation benefits for these employees. The pricing structure for Select Staffing's provision of labor to Saputo, as reflected in the contract, similarly indicates the contract contemplated that Select Staffing would secure workers' compensation coverage for these employees. The agreement permits Select Staffing to adjust its rates commensurate with changes in the cost of workers' compensation insurance premiums.

Christine Hedrick, the person most qualified regarding the negotiation, formation, understanding, and performance of the contract between Saputo and Select Staffing also observed the contract had an indemnity provision and the pricing structure reflected in the contract factored in the cost of workers' compensation insurance. Hedrick further testified that while the written agreement did not specifically call for Select Staffing to provide workers' compensation insurance for the temporary employees assigned to work at Saputo, conversations between Saputo and Select Staffing, and the certificate of insurance provided to Saputo on an annual basis by Select Staffing, confirmed their mutual understanding that Select Staffing was obligated to provide such insurance as part of their contractual relationship. Hedrick also testified that Saputo "require[d] that Select Staffing ha[ve] insurance to cover their employees that work at Saputo," and confirmed that Select Staffing complied with that requirement. Hedrick annually asked for proof of compliance in the form of a certificate of insurance, which Select Staffing consistently provided.

Here, the written contract along with relevant extrinsic evidence shows the parties to the contract intended the contract to encompass an obligation on the part of Select Staffing to obtain workers' compensation coverage for employees it provided to work at Saputo. Select Staffing complied with that obligation and demonstrated compliance by providing a certificate of insurance to Saputo on an annual basis. (See *Cal. Lettuce*

*Growers v. Union Sugar Co.* (1955) 45 Cal.2d 474, 482 ["[u]nexpressed provisions of a contract may be inferred from the writing or external facts"]; *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 546 ["California case law provides numerous examples of the use of extrinsic evidence to infer or clarify a contractual term"].) In short, the contract complied with section 3602, subdivision (d), entitling Saputo to the protection of the exclusive remedy rule.

Saputo also persuasively argues, in the alternative, that "[t]hese same undisputed facts also support the existence of an implied-in-fact contract for Select Staffing to obtain workers' compensation insurance for the employees it was providing to Saputo." Where parties to an agreement omitted something therefrom that was clearly an essential part of their understanding and that would have been incorporated if either party had requested it, the missing stipulation will be implied as part of the agreement. (*Sharpe v. Arabian American Oil Co.* (1952) 111 Cal.App.2d 99, 102.) Stated differently, "even if it be assumed that the words standing alone might mean one thing to the members of this court, where the parties have demonstrated by their actions and performance that to them the contract meant something quite different, the meaning and intent of the parties should be enforced." (*Crestview Cemetery Assn. v. Dieden* (1960) 54 Cal.2d 744, 754 ["Words are frequently but an imperfect medium to convey thought and intention. When the parties to a contract perform under it and demonstrate by their conduct that they knew what they were talking about the courts should enforce that intent."].)

Here, the parties' written contract, along with the facts that Saputo required Select Staffing to procure workers' compensation insurance for temporary workers like Sutton, Select Staffing did so, and Select Staffing demonstrated its compliance by annually

giving Saputo a certificate of insurance, establish an implied-in-fact contract obligating Select Staffing to obtain workers' compensation coverage for such workers.[5]

Sutton relies heavily on *Huffman*, *supra*, 84 Cal.App.4th 975, and *InfiNet*, *supra*, 150 Cal.App.4th 168, in asserting that Saputo is not immunized from suit under the Labor Code merely because Select Staffing had workers' compensation insurance covering Sutton. However, both those cases are distinguishable. In *Huffman*, *supra*, 84 Cal.App.4th 975, there was no agreement or arrangement whatsoever between the two companies that employed the plaintiff. Consequently, the mere fact that one company fortuitously procured workers' compensation insurance did not excuse or provide immunity from suit for the other company that had not. (*Id*. at pp. 985-987.) Similarly, in *InfiNet*, *supra*, 150 Cal.App.4th 168, there was no evidence of any agreement whatsoever to obtain workers' compensation insurance by the employer sued for negligence, and, therefore, there was no basis for immunity under section 3602, subdivision (a). (*Id*. at p. 179.)

Sutton also asserts that any contract under section 3602 requiring one employer to obtain insurance on behalf on another employer must be in writing to comply with the statute of frauds, because it amounts to a promise to answer for the debt of another. (See Civ. Code, § 1624, subd. (a)(2).) Saputo counters that "[t]here is no contract to answer for the debt of another within the statute of frauds where the alleged guarantor *promises the debtor* rather than the creditor to pay the former's debt." (Italics added.) (See *King v.*

---

[5]     Sutton argues we must not consider Saputo's argument regarding the existence of an implied-in-fact contract between Saputo and Select Staffing, because Saputo did not make this argument below. However, we disagree with Sutton's premise that the issue of implied contractual terms was not in play in the proceedings before the trial court. Further, to the extent Sutton contends the contract at issue must be an express, written contract, Sutton has not provided authority to establish that contention.

*Smith* (1948) 33 Cal.2d 71, 74 ["there is not a contract to answer for the debt of another within the statute of frauds where the alleged guarantor promises the debtor, rather than the creditor to pay the former's debt"]; *Crofoot v. Blair Holdings Corp*. (1953) 119 Cal.App.2d 156, 189 ["A promise to the debtor to guarantee his debts is not a promise to guarantee the debts of 'another' within the meaning of the statute of frauds."], overruled on other grounds by *Posner v. Grunwald-Marx, Inc*. (1961) 56 Cal.2d 169, 183; *20th Century Cigarette Vendors v. Shaheen* (1966) 241 Cal.App.2d 391, 395 ["The statute of frauds in no way bars enforcement of the third party beneficiary contract, since the promise to pay the note was made to the debtor."].) Saputo adds that "third persons who are not parties to a contract that violates the statute of frauds may not avail themselves of the statute." (See *Demeter v. Annenson* (1947) 80 Cal.App.2d 48, 57 ["The rule is elementary that the statute of frauds can be invoked only by the parties to the unwritten contract, and is not available to third persons who are not parties to it."].) We conclude Saputo has the better argument on this point.

Finally, the parties dispute whether Saputo has shown, as a matter of law, that it separately complied with the provisions of section 3700 and was entitled to immunity on that basis. Under section 3700, an employer secures payment of compensation either by being insured against liability to pay compensation or by securing a certificate of self-insurance. (§ 3700, subds. (a), (b).) Saputo contends it complied with section 3700 because it maintained its own workers' compensation insurance policy covering temporary employees like Sutton, a policy that would be triggered only in the event that Select Staffing failed to actually provide workers' compensation insurance coverage for such a worker. It is unnecessary for us to address this issue given our conclusion above that Saputo was entitled to immunity on another basis, namely, compliance with section 3602, subdivision (d), because it had secured payment of workers' compensation benefits

23.

for temporary employees, including Sutton, by contracting with Select Staffing for this purpose.

**II.     Saputo Was Not Required to Assert in its Answer to Sutton's Complaint, an Affirmative Defense Based on Worker's Compensation Immunity**

Sutton next argues the judgment must be reversed because Saputo failed to plead Workers' Compensation Act immunity as an affirmative defense in its answer to the complaint, as required by *Doney v. Tambouratgis* (1979) 23 Cal.3d 91, 96-97 (*Doney*). However, the court in *Gibbs v. American Airlines* (1999) 74 Cal.App.4th 1 (*Gibbs*), clarified the *Doney* rule. *Gibbs* noted: "A plaintiff's action against an employer upon allegations of a work-related injury is barred unless the plaintiff also alleges that the employer has failed to secure the payment of workers' compensation through mandated insurance." (*Gibbs*, *supra*, at p. 13.) *Gibbs* further clarified: "[T]he Supreme Court [has] said that workers' compensation insurance coverage *is presumed* where the plaintiff alleges facts establishing an employment relationship and work-related injury, but must be pleaded and proved by the defendant where the complaint does not allege an employment relationship and work-related injury." (*Ibid.*, citing *Doney*, *supra*, at pp. 97-98, italics added.)

Here, Sutton's complaint alleged he was a special employee of Saputo and his injury occurred during the course and scope of that employment. Sutton's complaint further alleged that Saputo "did not secure the payment of workers' compensation insurance coverage for employees provided by [Select Staffing], including [Sutton]." The complaint alleged the lawsuit was therefore proper under section 3706.

Since Sutton's complaint alleged he was Saputo's employee and was injured during the course and scope of his employment, the issue of workers' compensation coverage was sufficiently raised to be presumed, and Saputo was not required to

affirmatively plead that defense.  In addition, Saputo's answer included a general denial as follows:  "This answering Defendant denies each and every, all and singular, generally and specifically, the allegations contained in said Complaint, and each and every part thereof, and denies that [Sutton] was or will be damaged."  The general denial served to deny the complaint's additional allegation that Saputo "did not secure the payment of workers' compensation insurance coverage for employees provided by [Select Staffing], including [Sutton]."  (See *Walsh v. West Valley Mission Community College Dist*. (1998) 66 Cal.App.4th 1532, 1546 [where an answer asserts that some essential allegation of the complaint is not true, that does not constitute new matter and need not be asserted as an affirmative defense]; *Marich v. MGM/UA Telecommunications, Inc*. (2003) 113 Cal.App.4th 415, 424 ["An affirmative defense is *new matter* that defendants are required to plead and prove." (italics added); *Bevill v. Zoura* (1994) 27 Cal.App.4th 694, 698 ["Generally, a party must raise an issue as an affirmative defense where the matter is not responsive to essential allegations of the complaint.  [Citations.]  Thus, where a defendant relies on facts not put in issue by the plaintiff, the defendant must plead such facts as an affirmative defense.  [Citation.]  'Where, however, the answer sets forth facts showing some essential allegation of the complaint is not true, such facts are not "new matter," but only a traverse.' "]; see also Code Civ. Proc., § 431.30, subd. (b)(1) & (b)(2).)  Here, no more was required.

Saputo also persuasively argues that "Saputo did in fact plead a workers' compensation defense."  Saputo notes it asserted, as an affirmative defense, that "Plaintiff's injuries, if any there be, arose out of and occurred in the course and scope of Plaintiff's employment."  While Saputo did not specifically reference section 3602, the allegation that Sutton's injuries arose out of and occurred in the course and scope of his employment was sufficient to put Sutton on notice that the defense was raised.

25.

**III. The Trial Court Did Not Abuse its Discretion in Overruling Sutton's Objections to Saputo's Evidence**

Sutton argues the trial court erred in overruling his objections to certain items of evidence adduced by Saputo in support of its summary judgment motion. We review a trial court's ruling on evidentiary objections in connection with a motion for summary judgment, for abuse of discretion. (*Litinsky v. Kaplan* (2019) 40 Cal.App.5th 970, 988; *Tindell v. Murphy* (2018) 22 Cal.App.5th 1239, 1254.) Discretionary rulings will only be disturbed upon a showing of "a clear case of abuse" and "a miscarriage of justice." (*Cristler v. Express Messenger Systems, Inc*. (2009) 171 Cal.App.4th 72, 80.)

Some of Sutton's evidentiary objections have been rendered immaterial since we did *not* address Saputo's argument that it complied with section 3602 based on its *own* workers' compensation policy, which allegedly would have operated to cover Sutton to the extent Select Staffing's policy did not. As for Sutton's claims regarding his remaining evidentiary objections, we conclude he has not shown the trial court abused its discretion in overruling them.

## DISPOSITION

The judgment is affirmed. Saputo is entitled to its costs on appeal.

SMITH, J.

WE CONCUR:

HILL, P. J.

FRANSON, J.

26.